## Application of J. William VENEZIA.

### Patent Appeal No. 75–601.

United States Court of Customs and Patent Appeals.

March 11, 1976.

Donald R. Dunner, Lane, Aitken, Dunner & Ziems, Washington, D. C., atty. of record, for appellant; S. Michael Bender, Richard A. Craig, New York City, Arthur Jacob, Hackensack, N. Y., of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Thomas E. Lynch, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

LANE, Judge.

This is an appeal from the decision of the Patent and Trademark Office Board

of Appeals (board) affirming the rejections of claims 31 through 36 in application serial No. 31,500 filed April 24, 1970, for "Method of Splicing High Voltage Shielded Cables and Splice Connector Therefor." We reverse.

### The Invention

Appellant's invention is a splice connector having interrelated parts adapted to be assembled in the field to provide a splice connection between a pair of high voltage shielded electric cables.

Appellant's application contains claims drawn to the completed connector and to the method of making the splice connection, which have been allowed by the Patent and Trademark Office. On appeal before us are claims drawn to a splice connector "kit" consisting of the parts which are used in making the splice in their unassembled condition.

Claim 31, with our emphasis, is representative of the claims on appeal:

31. A splice connector kit having component parts *capable of being assembled* in the field at the terminus of high voltage shielded electrical cables for providing a splice connection between first and second such cables, said cables each having a conductor surrounded by an insulating jacket within a conductive shield wherein a portion of the conductive shield is removed to expose the insulating jacket and a portion of the insulating jacket is removed to expose the conductor at the terminus of the cable, the kit comprising the combination of:

a pair of sleeves of elastomeric material, each sleeve of said pair *adapted to be fitted* over the insulating jacket of one of said cables, each said sleeve having an external surface and a resiliently dilatable internal bore for gripping the insulating jacket to increase the dielectric strength of the creep path along the insulating jacket;

electrical contact means *adapted to be affixed* to the terminus of each exposed conductor for joining the conductors and making an electrical connection therebetween;

a pair of retaining members *adapted to be positioned* respectively between each of said sleeves fitted over the insulating jacket of each said cable and the corresponding terminus of each said cable, said retaining members each having means cooperatively associated therewith for maintaining each said member's position relative to the insulating jacket on each said cable and for precluding axial movement of the sleeve toward the corresponding terminus of each said cable; and

a housing, said housing having an internal bore extending therethrough from end to end, said housing including portions adjacent each end thereof defining said internal bore and being resiliently dilatable *whereby said housing may be slideably positioned* over one of said cables and *then slideably repositioned* over said sleeves, said retaining members, and said contact means *when said sleeves, said retaining members and said contact means are assembled* on said cables as hereinaforesaid, said resiliently dilatable portions of said housing respectively gripping the corresponding external surface of each said sleeve in watertight sealing relationship therewith and said housing having a further portion intermediate its ends defining said internal bore and forming a sealed chamber enclosing at least said contact means and the exposed portions of said cable conductors *when said housing is in its repositioned location.*

### The Rejections

Claims 31–36 were rejected under 35 U.S.C. § 112, second paragraph, as indefinite and incomplete in not defining a completed article of manufacture. The examiner particularly relied on *In re Collier,* 397 F.2d 1003, 55 C.C.P.A. 1280 (1968), as support for this rejection.

Claims 31–36 were additionally rejected under 35 U.S.C. § 101 because they were drawn to a plurality of separately and discretely listed and defined manufactures instead of *a* manufacture.

### The Board

The board at first unanimously sustained both of the above rejections. With respect to the section 112 rejection it stated:

In the Collier case, the two elements [see bracketed elements [1] and [2] of Collier claim 17, infra] recited specifically in the claims there under consideration were described in terms of intended uses and capability, and the like. The Court said:

"We agree with the Board, however, that the claim does not positively recite structural relationships of the two elements, identified as (1) and (2) above, in its recitation of what may or may not occur. In this sense it fails to comply with section 112, [second paragraph] In [sic] failing distinctly to claim what appellant in his brief insists is his actual invention."

An inspection of the claims here under consideration, see for example claim 31 above, discloses a similar situation. Although the preamble refers to the structure as a "kit", the elements are recited without present cooperation. The language is futuristic and conditional in character, thus,
a pair of sleeves — to be fitted —
electrical contact means — to be affixed —
a pair of retaining numbers [sic, members] — to be positioned —
a housing — may be slideably positioned — slideably repositioned —
when said sleeves are assembled on said cables —
when said housing is in its repositioned location.

From the above it is clear that the language of the claim taken as an example is directed to assembly to take place in the future. No present positive structural relationships are recited.

In affirming the section 101 rejection the board stated:

[Appellant] urges that the elements of his claimed combination are "joined together in a kit of component parts".

Such joining as may be recited in the claims, as we have pointed out above in connection with the rejection under 35 U.S.C. 112, relates to matters which may take place in the future. No *present* coaction is recited. The presence of the word "kit" in the preamble, we do not think fairly links the elements separately recited in the claims. Appellant has referred to no language in the claims which would support such "joining" and we know of none. [Emphasis in original.]

In a subsequent decision, upon reconsideration, one of the board members dissented, finding that appellant had distinctly claimed what he regarded as his invention under section 112. The dissenting member of the board also found that it was not fatal under section 101 that the cooperation of the claimed elements was recited as occurring at a future time.

This posture of the board remained intact following a third opinion rendered after a second request for reconsideration by appellant.

### OPINION

### Section 112 Rejection

■ We have reviewed the disputed claims and in particular the language criticized by the examiner and the board. We conclude that the claims do define the metes and bounds of the claimed invention with a reasonable degree of precision and particularity, and that they are, therefore, definite as required by the second paragraph of section 112. *In re Conley,* 490 F.2d 972 (C.C.P.A.1974); *In re Miller,* 441 F.2d 689, 58 C.C.P.A. 1182 (1971); *In re Borkowski,* 422 F.2d 904, 57 C.C.P.A. 946 (1970). As we view these claims, they precisely define a group or "kit" of interrelated parts. These interrelated parts may or may not be later assembled to form a completed connector. But what may or may not happen in the future is *not* a part of the claimed invention. The claimed invention does include present structural limitations on each part, which structural limitations are defined by how the parts

are to be interconnected in the final assembly, if assembled. However, this is not to say that there is anything futuristic or conditional in the "kit" of parts itself. For example, paragraph two of claim 31 calls for "a pair of sleeves . . . each sleeve of said pair *adapted to be fitted* over the insulating jacket of one of said cables." Rather than being a mere direction of activities to take place in the future, this language imparts a structural limitation to the sleeve. Each sleeve is so structured or dimensioned that it can be fitted over the insulating jacket of a cable. A similar situation exists with respect to the "adapted to be affixed" and "adapted to be positioned" limitations in the third and fourth paragraphs of the claim. The last paragraph of claim 31 contains additional language criticized by the board, including "may be slideably positioned," "slideably repositioned," "when said sleeves . . . are assembled," and "when said housing is in its repositioned location." However, this language also defines present structures or attributes of the part of the "kit" identified as the housing, which limits the structure of the housing to those configurations which allow for the completed connector assembly desired. Again, a present structural configuration for the housing is defined in accordance with how the housing interrelates with the other structures in the completed assembly. We see nothing wrong in defining the structures of the components of the completed connector assembly in terms of the interrelationship of the components, or the attributes they must possess, in the completed assembly. More particularly, we find nothing indefinite in these claims. One skilled in the art would have no difficulty determining whether or not a particular collection of components infringed the collection of interrelated components defined by these claims. *In re Miller,* supra.

We also fail to see any basis for rejecting appellant's claims for being incomplete in failing to recite a completed assembly. Appellant's invention is a "kit" of parts which may or may not be made into a completed assembly. Since all of the essential parts of the "kit" are recited in the claims, there is no basis for holding the claims incomplete.

We cannot leave our discussion of the section 112 rejection without discussing *In re Collier,* supra, relied on by both the examiner and the board as support for this rejection. In *Collier* we were confronted by the following claim:

17. *For use* in a ground connection, [1] a connector member *for* engaging shield means of a coaxial cable means,

said connector member comprising a substantially rectangular piece of metal formed into trough form to define a ferrule-forming member, said ferrule-forming member having

a series of perforations disposed therein toward the axis of the ferrule-forming member and defining inwardly directed frusto-conical projections having jagged edges defining lances converging toward their tips,

said ferrule-forming member being *crimpable* onto said shield means with said lances keying into said shield means without penetrating insulation means disposed thereunder,

█ and ground wire means *for* disposition between said ferrule-forming member and said shield means *upon* the ferrule-forming member being crimped onto the shield means,

said ground wire means *being displaced* in a series of bights around respective perforations to effect serpentine form *when* said ferrule-forming member is crimped onto said shield means. [55 C.C.P.A. at 1281–82, 397 F.2d at 1004–05. (Emphasis and brackets in original opinion).]

In *Collier* appellant argued that we were to regard the italicized portions of claim 17 about intended uses, capabilities, and structures which would result upon the performance of future acts, as positive structural limitations. However, we found that the claim did not positively recite any structural relationship between the two elements identified as [1] and [2], in its recitation of what may or may not occur. We concluded that the

claim failed to comply with section 112, second paragraph, in "failing distinctly to claim what appellant in his brief insists is his actual invention."

There is no issue in this case of whether appellant is claiming what he regards as his invention. Moreover, although the claims before us contain some language which can be labeled "conditional," this language, rather than describing activities which may or may not occur, serves to precisely define present structural attributes of interrelated component parts of the "kit," such that a later assembly of the "kit" of parts may be effected. Thus, we find *In re Collier* inapposite to the claims presently before us.

### Section 101 Rejection

35 U.S.C. § 101 provides in pertinent part:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter . . . may obtain a patent therefor . . . .

Both the examiner and the board construed the language "any . . . manufacture" as excluding from its ambit claims drawn to a "kit" of parts, reasoning that a "kit" would be a plurality of separate manufactures, not a single manufacture.

The solicitor in his brief recognizes that the Patent and Trademark Office has in the past issued patents containing similar claims drawn to "kits" of interrelated parts.[1] He argues, however, that double patenting decisions by this court, holding that an inventor may obtain only one patent on a single invention, show that this court has interpreted portions of section 101 in the singular. From this

he reasons that the word "manufacture" in section 101 is to be similarly interpreted.

We do not find our decisions on double patenting to be applicable to an interpretation of the words "any manufacture" in section 101. Suffice it to say that the two situations are totally dissimilar. In the section 101 "same invention" type double patenting cases, all we were construing was the phrase "a patent therefor."

No other authority has been cited, either by the board or the solicitor, to support the narrow construction which the Patent and Trademark Office now seeks to impose on the words "any manufacture" in section 101.

██ We do not believe the words in question are to be so narrowly construed. To hold that the words "any manufacture" exclude from their meaning groups or "kits" of interrelated parts would have the practical effect of not only excluding from patent protection those "kit" inventions which are capable of being claimed as a final assembly (e. g., a splice connector), but also many inventions such as building blocks, construction sets, games, etc., which are incapable of being claimed as a final assembly. We do not believe Congress intended to exclude any invention from patent protection merely because it is a group or "kit" of interrelated parts. We therefore hold that a group or "kit" of interrelated parts is a "manufacture" as that term is used in section 101.

Accordingly, the decision of the board is *reversed.*

*REVERSED.*

---

1. There are copies of several patents in the record which contain "kit" claims exemplifying this prior practice, including patent No. 3,108,803, claiming a basketball goal set kit, patent No. 3,041,778, claiming a puppet kit, patent No. 1,974,838, claiming a toy construction set, and patent No. 3,355,837, also claiming a toy construction set.