**PAC–TEC, INC., Plaintiff–Appellant,**

v.

**AMERACE CORPORATION, Defendant–Appellee.**

Nos. 89–1329, 89–1692.

United States Court of Appeals, Federal Circuit.

May 9, 1990.

Owen E. Perry of Reising, Ethington, Barnard, Perry & Milton, Troy, Mich., argued for plaintiff-appellant. With him on the brief were Jeanne–Marie Buiteweg and Richard W. Hoffmann.

Ronald A. Sandler of Jones, Day, Reavis & Pogue, Chicago, Ill., argued for defendant-appellee. With him on the brief was Sandra B. Weiss. Of counsel were Charles Rutherford, Robert L. Kelly and Dykema Gossett, Detroit, Mich.

Before MARKEY, Chief Judge, BENNETT, Senior Circuit Judge, and PLAGER, Circuit Judge.

MARKEY, Chief Judge.

Pac–Tec, Inc. (Pac–Tec) appeals from a judgment of the United States District Court for the Eastern District of Michigan, No. 86CV73873DT (DeMascio, J.), that 13 claims of Amerace Corporation's (Amerace) patent 4,155,666 ('666) and 23 claims of Amerace's patent 4,195,945 ('945) were infringed and not invalid. Pac–Tec further appeals from an order denying its motion for recusal. Amerace seeks sanctions against Pac–Tec pursuant to Rule 38, Fed. R.App.P. We affirm the judgment and order and impose a sanction on Pac–Tec and its counsel.

## I. BACKGROUND

### A. The Patents and Accused Devices

Pavement markers mark road lanes and aid the direction of vehicular traffic. Those used in northern climes are subject to the impact of snowplow blades. The '666 and '945 patents are directed to "snowplowable" pavement markers. The markers have a "signal means," i.e., a reflector, carried and protected by a "base member," i.e., a one-piece metal casting, the reflector and casting adapted to being partially disposed below road level.

Claim 1 of the '666 patent is representative:

1. A low-profile pavement marker for use in snow areas for establishing on a finished roadway surface a marking visible from an oncoming vehicle while protecting the marking from damage by oncoming snowplow blades during snowplowing operations, said pavement marker comprising a base member defining two laterally spaced-apart ramp members each having a lower portion and an upper portion and an inclined surface extending between a lowermost end and an uppermost end to form an inclined ramp, the lower portion of said base member adapted to be recessed below the roadway surface with the upper portion of each said ramp member extending above the roadway surface, and signal means adapted to be disposed between and below said ramp members with a lower portion of the signal means disposed below the roadway surface and an upper portion of the signal means disposed above the roadway surface, so that an oncoming snowplow blade will ride up said ramp members and be deflected thereby from contact with said signal means as the snowplow blade passes over said pavement marker, said signal means, including at least a part of said lower portion thereof, being operative to reflect light incident upon said signal

means from an oncoming vehicle back toward said oncoming vehicle, said ramps being so configured and arranged to provide adequate space therebetween to allow vehicle tires to wipe the signal means, and whereby said signal means by being partially recessed in use below the level of the associated roadway surface minimizes the total height of said pavement marker above the roadway surface thereby to reduce the impact energy imparted to said pavement and to oncoming vehicles striking said marker.

Claim 1 of the '945 patent is representative:

1. A base member for use as a component of a low-profile pavement marker for use in snow areas for establishing on a finished roadway surface a marking visible from an oncoming vehicle while protecting the marking from damage by oncoming snowplow blades during snowplowing operations, said base member having first and second laterally spaced-apart longitudinally extending ramp members each having a lower portion and an upper portion and an inclined surface extending between a lowermost end and an uppermost end to form an inclined ramp, the lower portion of said base member defining a longitudinally extending keel portion adapted to be recessed below the roadway surface with the upper portion of each said ramp member extending above the roadway surface, and said base member further having a support member interconnecting said ramp members and providing a downwardly facing bottom surface adapted to be disposed in a complementary recess in the associated pavement and a generally upwardly facing support surface adapted to carry signal means thereon, the signal means thus adapted to be disposed between and below said ramp members with an upper portion of the signal means disposed above the roadway surface, so that an oncoming snowplow blade will ride up said ramp members and be deflected thereby from contact with said signal means as the snowplow blade passes over said pavement marker, said ramps being so configured and arranged to provide adequate space therebetween to allow vehicle tires to wipe the signal means, and whereby said bottom surface by being recessed in use below the level of the associated roadway surface enables minimization of the total height of said base member above the roadway surface thereby to reduce the impact energy imparted to said base member and the pavement and to oncoming vehicles striking said base member.

Amerace manufactures and sells pavement markers. Pac–Tec obtained its casting from Amerace's casting supplier and began making its pavement markers. The district court described the Pac–Tec marker:

It has longitudinally extending ramp members with an inclined surface forming a ramp which is intended to extend above the roadway surface, while the lower portion is recessed below the roadway surface in such a way as to prevent jolting of snowplow blades. The ramps are arranged to provide adequate space for tires to wipe the signal means clear, yet are of such a height as to protect such signal from snowplow blades. A support member connects the ramp members, having an upper surface designed to carry a signal means, and a lower surface designed to be recessed below the roadway.

## B. The Proceedings

Pac–Tec filed suit on September 15, 1986, seeking a declaration of invalidity and noninfringement of Amerace's patents. Amerace counterclaimed for infringement and moved for summary judgment on that issue. On March 3, 1988, the district court granted summary judgment that Pac–Tec infringed both patents.

Pac–Tec moved for summary judgment of invalidity on three grounds: (1) obviousness-type double patenting of the '666 and '945 patents with respect to each other and with respect to Amerace's patent 3,587,416 ('416); (2) lack of novelty over the '416 patent (35 U.S.C. § 102(a), (b)); and (3) indefiniteness (35 U.S.C. § 112). Amerace cross-moved for summary judg-

ment on validity. The district court, on June 8, 1988, granted summary judgment to Amerace on issues (1) and (3) and denied summary judgment to both parties on issue (2).

After a trial on novelty in light of the '416 patent and United States Patent Nos. 2,260,498 (Wise) and 1,952,942 (Ross), the district court held that Pac–Tec had failed to establish lack of novelty and, on February 14, 1989, enjoined Pac–Tec from further infringement.[1] Sanctioning Pac–Tec's counsel under Rule 11, Fed.R.Civ.P., the district court noted that Pac–Tec improperly raised in post-trial proceedings an entirely new patent marking issue, ordered that scurrilous references to Amerace's attorney be stricken from Pac–Tec's post-trial pleadings, and, pursuant to 35 U.S.C. § 285, awarded Amerace its attorney fees in light of Pac–Tec's willful infringement and dilatory litigation tactics.

On March 13, 1989, Pac–Tec moved under 28 U.S.C. §§ 144, 455(a) for recusal of Judge DeMascio, citing certain remarks from the bench. On August 21, 1989, while its recusal motion was pending, Pac–Tec filed a "Petition for Writ of Mandamus" asking this court to vacate or modify the injunction. This court, because Pac–Tec's appeal from the judgment was already pending in this court, treated the petition as a motion for stay and denied it on October 30, 1989, stating that Pac–Tec: (1) raised issues not presented to the district court, (2) misstated the record, and (3) directed an unfounded attack on the remarks of the district court on which Pac–Tec based its pending recusal motion. We sanctioned Pac–Tec for its frivolous petition and awarded Amerace its attorney fees and double costs under Rule 38, Fed.

R.App.P. *In re Pac–Tec, Inc.*, Misc. No. 260 (Fed.Cir. October 30, 1989).

After Judge DeMascio denied Pac–Tec's recusal motion (but before this court had issued its October 30 order) Pac–Tec sought from the Court of Appeals for the Sixth Circuit a writ of mandamus directing Judge DeMascio to vacate his denial. On December 8, 1989, the Sixth Circuit denied the petition as frivolous and sanctioned Pac–Tec by awarding Amerace its attorney fees and double costs under Rule 38, Fed. R.App.P. *In re Pac–Tec, Inc.*, No. 89–2225 (6th Cir. December 8, 1989).

## II. OPINION

This signifies the end, we trust, of Pac–Tec's and its counsel's singularly sanctionable sojourn among the hallowed halls of justice. Throughout this litigation, the conduct of Pac–Tec and its counsel have fouled the judicial nest. Continued on this appeal is the pestiferous pestilence that led to a Rule 11 sanction, striking portions of Pac–Tec's post-trial pleading, imposition of attorney fees for willful infringement and dilatory litigation at the trial level, and imposition of sanctions by two appellate courts.

The appeal itself is frivolous, and its frivolity is unrelieved by even one of counsel's many arguments. Beyond frivolity, however, the conduct of counsel in this litigation infects the judicial process with a disabling disease of deceit that the courts must act to expunge, for if courts remain passive, that disease will spread until it destroys a judicial process and a legal profession no longer worth preserving.

Forgetting entirely the responsibility imposed on him as an officer of the court, Pac–Tec's counsel displays a deplorable

---

1. The injunction reads:

The defendant shall have injunctive relief permanently enjoining and restraining the plaintiff, its officers, agents, attorneys, servants, employees, and all those in active concert or participation with them who receive actual notice of such injunction by personal service or otherwise, from directly and indirectly making, using or selling, or causing to be made, used or sold, any pavement markers and pavement marker base members like or similar in structure to the pavement markers and pavement marker base members identified in this action as exhibits 9, 10, and 11 and any other pavement markers and pavement marker base members covered by the claims of said letters patent nos. 4,155,666 and 4,195,-945, during the respective terms of said patents and from offering or advertising so to do and from aiding or abetting or in any way contributing to the infringement of any of said claims or in any way violating the rights of defendant under said patents.

depth of disrespect for the judicial process and a lamentable lack of candor in misstating the record and in disregarding the rules of procedure and the decided cases. His approach on this appeal is to fire a shotgun loaded with nothing but spurious arguments on infringement, invalidity, evidence exclusion, injunction scope, and judicial bias, none of which rises to the level of an argument even remotely based in fact or law. Eschewing the discomfort generated by extended discussion of counsel's baseless arguments and attempts to retry his case on appeal, we describe them only so far as necessary to explicate the bases for the foregoing characterization.[2]

## Infringement

Having never denied infringement before the district court ruled, having presented no evidence in conflict with Amerace's, and having raised no genuine issue of material fact before the district court issued its order granting summary judgment on the infringement issue, Pac–Tec brazenly burdens Amerace and this court with four pages of meritless argument in which it points to *no* claim language that does not read on its accused markers. Further, Pac–Tec attacks Amerace's proof, falsely stating that it consisted of a single affidavit and ignoring the deposition testimony of its own officers and owners, the deposition testimony of an inventor and an attorney, and over 30 exhibits. Pac–Tec then improperly attempts to create an issue of fact out of *post-judgment* testimony which it nonsensically *doctors* and *distorts*. Finally, though all of this was pointed out in Amerace's brief and is clear in the record, Pac–Tec included a segment on infringement in a reply brief in which it again simply ignored the record.

The challenge to the infringement finding in this appeal is frivolous.

2. It would unduly lengthen this opinion if we were to discuss all the statements in Pac–Tec's briefs which mischaracterize the record.

3. Pac–Tec's effort, mid-trial, to inject another new issue, i.e., patent marking, was also rejected by the district court. Incredibly, Pac–Tec argues that issue in its brief before us. Though

## Invalidity

Pac–Tec's primary attack on validity is based on the assertion that Amerace's claimed inventions are anticipated by the disclosures in three patents considered by the Patent and Trademark Office examiner. The assertion rests on Pac–Tec's improper redrafting of the claims by deleting the preamble and all limitations that include "adapted to", "whereby", and "thereby" so that the claims are reduced to mere collections of parts. Pac–Tec totally disregards the district court's careful consideration, after a full trial on the § 102(a) and (b) issues, of the claims as wholes. In so doing, the court found that the language excised by Pac–Tec constituted structural limitations, citing as authority *In re Venezia*, 530 F.2d 956, 189 USPQ 149 (CCPA 1976). In its brief here, Amerace cited seven additional authorities for the proposition that functional language, in cases like the present, cannot be disregarded. Although Pac–Tec cited 48 cases in its main brief and 15 cases in its reply brief, it nowhere responds to any of the authorities cited by Amerace on the point and did not list *Venezia* in the Table of Authorities accompanying its Reply Brief.

In the face of this court's repeated condemnation of the practice of raising issues for the first time on appeal, and after a trial limited to its defenses under § 102(a) and (b), Pac–Tec blatantly argues a defense under § 102(g) and asserts a conjectural claim interpretation, neither of which were presented to the district court. Pac–Tec attempts to excuse that improper conduct with the ridiculous assertion in its reply brief that the issue is "inherent in the anticipation defense." Pac–Tec's infraction of the rule is rendered even more unforgivable in light of the district court's rejection of its effort to inject a new § 102(f) issue at trial.[3]

the issue was improperly raised, the district court went on to point out, and the record clearly establishes, that there was an absolute absence of evidence that Amerace intended to deceive the public or that Pac–Tec relied upon or was confused by Amerace's patent marking.

■ Pac–Tec improperly argues obviousness-type double patenting as though that issue had been tried, whereas it was raised only in Pac–Tec's motion for summary judgment. That motion was accompanied by a single affidavit, which the district court found deficient because the affiant had analyzed only portions of the claims and had made no factual assertions of the type mandated by *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 556, 148 USPQ 459, 474 (1966). Pac–Tec nowhere cites the record presented to the district court on its summary judgment motion. Nowhere does Pac–Tec recognize that its affiant recanted much of his affidavit or that the examiner had fully dealt with the question of double-patenting.

Pac–Tec's invalidity arguments are frivolous.

### Evidence Exclusion

■ Pac–Tec argues that it was error to exclude an exhibit and a British patent disclosing it. Pac–Tec says, *falsely,* that it was excluded only because of failure to include it in the 35 U.S.C. § 282 notice and pre-trial order. The truth is that the exclusion was clearly based on Pac–Tec's failure to exercise diligence. Pac–Tec cites cases clearly distinguishable, fails even to allege prejudice, fails even to allege that this prior art is more pertinent than that considered by the examiner and at trial, and fails to recognize the district court's observations of the differences between the exhibit and the claimed subject matter in suit. The argument is frivolous.

### Injunction Scope

■ Pac–Tec argues that it should be enjoined only against direct infringement under 35 U.S.C. § 271(a), i.e., only against making the accused device, and left free to engage in contributory infringement. The district court, however, had ample evidence before it of direct and indirect infringement. Moreover, the district court has power to grant an injunction in accordance

Pac–Tec's assertion of the issue on this appeal is

with the principles of equity to prevent the violation of any rights secured by patent. 35 U.S.C. § 283. The grant of an injunction is reviewed on an abuse of discretion standard. *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1002, 228 USPQ 562, 567 (Fed.Cir.), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986). Pac–Tec nowhere mentions that standard and makes no showing whatever of such abuse.

■ Pac–Tec also argues that the injunction encompasses unadjudicated claims. Again, Pac–Tec ignores the rules. Though it filed a Motion to Amend the Judgment, it never presented this argument to the district court, yet it asks this court to find the district court in error for not considering what it never presented. Further, if it had argued the question, it could not have prevailed, for as Pac–Tec admitted in one of its petitions for mandamus, "any device that infringes a non-adjudicated claim will inherently also infringe an adjudicated claim."

The arguments respecting the injunction's scope are frivolous.

### Bias

Difficult as it may seem, Pac–Tec manages to exceed the egregiousness described above in alleging bias of the trial judge. In the annals of frivolity the allegation of bias on this appeal would win a prized place. Of all the charges that might be leveled against one sworn to "administer justice" and to "faithfully and impartially discharge and perform all the duties incumbent upon me," 28 U.S.C. § 453, a charge of bias must be deemed at or near the very top in seriousness, for bias kills the very soul of judging—fairness. Obviously no such charge should be made lightly and without a solid basis in fact and law. Sadly, Pac–Tec and its counsel have in this litigation made the charge four times, each time with no basis whatever in either fact or law, the last three times after Pac–Tec and its counsel had been clearly shown the absolute falseness of the charge and the legal im-

frivolous.

propriety of lodging it.[4]

] Pac–Tec says in its brief that the district court was biased because "he made an extrajudicial contact with a casting manufacturer, had a casting sent to him." At oral argument, Pac–Tec's counsel quoted the district court as having said "I called up a casting manufacturer, had them send me a casting" and "I contacted the casting manufacturer and had him send me a casting." As the record shows, the district court never said what Pac–Tec says it said. Pac–Tec's misquote is reprehensible.

Pac–Tec has never identified the source of the casting, and for good reason. As Pac–Tec and its counsel were reminded in the district court's denial of the recusal motion, the district court got the casting during the pre-trial stage *from Pac–Tec's counsel.* In its brief here, Amerace again reminded counsel that *he*, Pac–Tec's counsel, was the source of the casting.

In what demonstrates a shockingly shabby performance of a counsel's appellate role (wherein counsel is expected to know intimately the record), the following colloquy occurred at oral argument (emphasis added):

The court: Are you going to say anything about whether or not *you* gave the casting to Judge DeMascio?

Counsel for Pac–Tec: Sir, to Judge DeMascio, Your Honor, I ...

The court: Did *you* give him the casting?

Counsel for Pac–Tec: I believe I ... Yes, I gave him a casting. I did, Your Honor. Yes. I gave him a casting. I gave him a casting, and I rely on the words ... *I don't know the exact words* here in front of me, but Judge DeMascio said "I contacted the casting manufacturer and had him send me a casting." I don't think it makes any difference whether I gave him one. *If* he got one from the casting manufacturer I think that was improper. I

believe that was improper. And I, I think it violates the recusal statute for him to have, to have, *if* he did exactly what he said in there, *if* he contacted the casting manufacturer, had him send me a cop ..., send him the casting ...

The court: Wait a minute, wait a minute, Counsel.

Counsel for Pac–Tec: Yes sir.

The court: You said *if* he did that.

Counsel for Pac–Tec: He *did say* that, Your Honor.

The court: Did you give us a record reference in your brief?

Counsel for Pac–Tec: Yes sir, yes, Your Honor, it's in the brief. It's in the appendix, and I don't know if I can exactly, uh, it's in the appendix, and I gave you a record reference. Yes, Your Honor.[5]

The court: (to counsel for Amerace) You said the Judge didn't say that.

Counsel for Amerace: He did not say, "I contacted the casting manufacturer." What he, that's what he interprets the judge to have said, and that's what Judge DeMascio in his denying of the recusal motion said: "He's misinterpreting it." There was not the words "I contacted a casting manufacturer", what the judge said is "both castings were made by the same manufacturer," which they were, he had evidence of that in the case, and then what he said was essentially, "I asked for a casting." Which he did. He got one from Mr. Perry. He didn't say "I contacted the manufacturer for the casting," and that's what Judge DeMascio says in his own decision denying recusal.

The court: (to counsel for Pac–Tec) Do you think Judge DeMascio was mis-

---

**4.** Pac–Tec did file a motion to recuse, citing 28 U.S.C. §§ 144, 455, thus providing a basis for appealing the order denying the motion, as distinguished from merely asserting bias for the first time on appeal. Though Pac–Tec followed correct procedure in this one instance, its diffi-

culty, as explained in the text, is that the motion was baseless.

**5.** The words quoted by Pac–Tec's counsel appear nowhere in the 19–page "record reference" mentioned by him, and nowhere in the entire record.

stating when he denied the motion for recusal? Misstating the record?

Counsel for Pac–Tec: Your Honor, uh, I think ... Judge DeMascio said on the record, and that's in here, either "I contacted him myself" or "had my court clerk contact the casting manufacturer and send me a casting." Then when he denied the motion to recuse, he said "that isn't what I said" or "that isn't what I meant." *I don't know.* I don't think, I don't think Judge DeMascio would lie. I'm not suggesting that. I'm not, uh, I think that the, the comments he made along with other criticisms of me, he made a, an attack on my credibility at that time. I think that violates the recusal statute. I'm sorry. I cannot, you know, I don't, I'm not comfortable attacking a, being put in a position, I put myself in it by raising the recusal issue. *I have an obligation to my client.*[6] And I believe, I honestly believe the recusal statute was violated. I believe Judge DeMascio improperly denied my motion to recuse.

Pac–Tec asserts, with no support, that the district court used the casting in determining infringement. Though it need not have done so, the district court carefully explained to Pac–Tec's counsel how infringement was found on all the evidence. Counsel's assertion, in light of that explanation, is frivolous.

■■■ A second basis for Pac–Tec's charge was the district court's expression of dissatisfaction with counsel's failure to appear at a hearing on a motion to quash a subpoena. The district court, in denying the motion to recuse, patiently tried to teach the law to counsel, citing *United States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *Price Bros. Co. v. Philadelphia Gear Corp.*, 649 F.2d 416 (6th Cir.), *cert. denied*, 454 U.S. 1099, 102 S.Ct. 674, 70 L.Ed.2d 641 (1981); *EEOC v. Mercy Hosp. and Medical Center*, 709 F.2d 1195 (7th Cir.1983); *In re*

*Cooper*, 821 F.2d 833 (1st Cir.1987); *In re Beard*, 811 F.2d 818 (4th Cir.1987); *In re Yagman*, 796 F.2d 1165 (9th Cir.1986); *Davis v. Board of School Comm'rs*, 517 F.2d 1044 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *Johnson v. Trueblood*, 629 F.2d 287 (3d Cir.1980), *cert. denied*, 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981), for the rule that bias cannot be shown by remarks concerning the evidence or conduct that the court observed during the proceedings, and the rule that remarks concerning counsel's conduct cannot evidence bias against a *party*. Counsel should not have had to be told all that. Research for less than an hour would have revealed it. Yet, having been shown, counsel egregiously flouts the law in presenting his argument to this court that bias was shown by the court's proper expression of frustration with counsel's conduct.

Counsel's allegations of bias are an outrageous fabrication made of whole cloth. As the record unequivocally establishes, that fact was necessarily known to counsel when he filed this appeal. The assertions of bias are not only frivolous; they are brazen, blatant, and boorish.

### Sanction

■■■ We have said the purpose of Rule 38 is not only to compensate a winner at trial for expense and delay in defending a meritless appeal but to deter frivolous appeals and thus preserve the appellate calendar for cases worthy of consideration. *Sun–Tek Indus. v. Kennedy Sky–Lites, Inc.*, 865 F.2d 1254, 1255, 9 USPQ2d 1574, 1575 (Fed.Cir.1989). This utterly meritless appeal imposed totally unnecessary costs not only on Amerace but on the public whose taxes support this court and its staff. *See Porter v. Farmers Supply Serv.*, 790 F.2d 882, 229 USPQ 814, 817 (Fed.Cir.1986). Accordingly, we award to Amerace its attorney fees and double costs incurred on this appeal, for the payment of which Pac–Tec's counsel, Owen E. Perry, is

---

**6.** Counsel's obligation to his client, as well as to the court, is to know the record and present it accurately. Clients have a fundamental interest

in the fair and truthful administration of justice that far exceeds their monetary interest in a particular case.

liable jointly and severally with Pac–Tec, which stood to benefit if counsel's deplorable tactics had succeeded. Rule 38, Fed.R.App.P.

AFFIRMED—SANCTIONS IMPOSED.