MICHEL, Circuit Judge.
 

 Romala Corporation appeals the May 18, 1990 judgment of the United States Claims Court dismissing its action under the Contract Disputes Act against the government, in which it contended that in terminating a contract for Romala’s non-performance, the government breached the contract.
 
 Romala Corp. v. United States,
 
 20 Cl.Ct. 435 (1990). Because the Claims Court’s findings with respect to the facts at issue were not clearly erroneous, because its interpretation of the contract was correct as a matter of law, and because its application of the correct construction to the found facts involved no error, we affirm. And because Romala’s appeal is frivolous, we impose sanctions pursuant to Fed.R.App.P. 38 and hold Romala and its attorney jointly and severally liable to the government for double its costs.
 

 BACKGROUND
 

 In September, 1984 the United States Postal Service advertised that it was interested in leasing a building in Dragoon, Arizona, to be used as a post office. Romala requested and was sent a bid package, which included drawings and specifications of architectural, plumbing, electrical and other requirements for the proposed facility. On October 11, 1984, Romala responded by submitting an executed copy of the Postal Service's standard form contract, titled “Agreement to Lease,” offering to lease space for a ten-year term and subsequent five-year terms. Romala’s bid, however, deviated from the standard form lease agreement in two respects: First, Romala had struck through all or part of five paragraphs of the general conditions in the form lease. Second, Romala also included with its bid a series of drawings and photo
 
 *1221
 
 graphs with a cover letter stating that they were plans of a prototype facility it had constructed for the Postal Service in the past at other locations. The form lease as submitted included a Paragraph 10, unaltered by Romala, which provided in relevant part:
 

 Within 60 days after having received his copy of the “Agreement to Lease” the lessor shall submit four (4) sets of the preliminary plans and specifications as adapted to the specific site by the lessor’s A/E firm. This submittal shall be at the 30% design stage. A
 
 final plan review
 
 shall be made at the
 
 100% design stage
 
 prior to the commencement of construction. (emphasis added.)
 

 Romala’s president discussed the bid with representatives of the Postal Service from the October, 1984 submission date until March, 1985, when the Postal Service accepted Romala’s offer by mailing to Romala an executed copy of the Agreement to Lease. The Postal Service also sent Romala a letter, dated March 28, 1985, stating that the drawings submitted with the bid were being considered as the required 30 percent plans, noting the probable need for their revision, and calling attention to Romala’s obligation to submit plans at the "100 percent design stage” before construction could begin. Romala replied with a letter, dated April 10, 1985, to the effect that it considered what it had already submitted, on its prototype facility, to be 100 percent plans.
 

 The parties began a year-long series of discussions and correspondence aimed at reaching agreement on a set of drawings that could be accepted as 100 percent design stage plans. These efforts failed, and Romala then submitted a claim to the Contracting Officer, who denied the claim and terminated the contract for default.
 

 In September, 1987 Romala filed this suit in the United States Claims Court under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613 (1982), alleging that the government’s termination of the contract between the parties amounted to a breach. The Claims Court tried the case and on May 18, 1990 issued its decision holding that because the contract required Romala to submit plans at the 100 percent design stage, and because no plans had been submitted that were adequate to be deemed 100 percent design stage plans, the termination for default was not arbitrary or capricious and thus was not a breach of contract.
 
 Romala Corp. v. United States,
 
 20 Cl.Ct. 435, 446-47 (1990). Romala being precluded as a matter of law from recovering, the court dismissed the complaint, and this appeal followed.
 

 Our jurisdiction is based on 28 U.S.C. § 1295(a)(3) (1988).
 

 DISCUSSION
 

 I
 

 The Claims Court interpreted the contract to require submission of plans at the 100 percent design stage. This interpretation reflects the explicit language in paragraph 10 as well as the facts as found by the court, and we hold that it is correct as a matter of law.
 

 It is undisputed that while Romala crossed out some provisions in the standard form contract it submitted to the Postal Service, it did not cross out paragraph 10, quoted above, which contained language specifically providing for submission of one set of plans at the “30 percent design stage” and another set at the “100 percent design stage.” This language was not inconsistent, as Romala seems to argue, with its submission of its prototype plans in its bid: The Claims Court found, and there certainly can be no clear error here, that the cover letter submitted with the bid stated only that the prototype plans were being submitted, not that Romala would not supply more complete plans. Furthermore, Romala does not argue on appeal any clear error in the Claims Court’s finding, based on its weighing of testimony and its inferences from the content and timing of the correspondence between the Postal Service and Romala, that prior to accepting Romala’s bid the Postal Service pointed out to Romala’s president that
 
 additional
 
 (i.e., 100 percent) plans would still be required. Nor do we find clear error in the Claims
 
 *1222
 
 Court’s finding that the prior course of dealing between the parties (which in any event was with other postal officials in other postal regions of the country) was not sufficient to constitute a mutual understanding that Romala’s preliminary plans must always and everywhere be accepted as 100 percent design stage plans.
 

 In light of the factual findings by the Claims Court in this case, we hold that the court’s construction of the contract to require submission of plans beyond those submitted with the bid proposal is correct as a matter of law. The court found, and Romala has not disputed on appeal, that despite adequate opportunity to do so, Romala never submitted more detailed plans. The court thus correctly determined that the Postal Service’s termination of the contract was not arbitrary or capricious. Accordingly, the judgment of dismissal of this suit for breach of contract must be affirmed.
 

 II
 

 Having determined that Romala’s appeal is entirely without merit, we shall now consider whether it lacked an arguable basis, thus making it frivolous within the meaning of Fed.R.App.P. 38. As we noted in our recent decision in
 
 Finch v. Hughes Aircraft Co.,
 
 926 F.2d 1574, 1578-79 (Fed.Cir.1991), there are two senses in which an appeal can be held frivolous: First, where an appeal is taken in a case in which “the judgment by the tribunal below was so plainly correct and the legal authority contrary to appellant’s position so clear that there really is no appealable issue,” the appeal is held to be “frivolous as filed.”
 
 Id.
 
 at 1580. Second, even in cases in which genuinely appealable issues may exist, so that the taking of an appeal is not frivolous, the appellant’s misconduct in arguing the appeal may be such as to justify holding the appeal to be “frivolous as argued.”
 
 Id.
 

 Here, on the one hand, Romala’s appeal is a very weak one, with little or no chance of success. On the other hand, the appeal is directed to an arguable issue of contract interpretation, a question of law which we review de novo (although in this case the contract language is explicit and the interpretation is highly influenced by findings of fact that have not been shown to be clearly erroneous). In these circumstances, we consider it a close question whether the mere filing of the appeal is in itself frivolous. But we need not decide whether Romala
 
 might
 
 have been able to make a non-frivolous argument for reversal here: Regardless of whether the appeal is frivolous as filed, Romala’s post-filing conduct, consisting of irrelevant .and illogical arguments based on factual misrepresentations and false premises, is the sort of appellate litigation behavior that makes an appeal frivolous
 
 as argued,
 
 and thus eligible for sanctions.
 

 Romala’s basic contention on appeal is that the Claims Court erred in interpreting the contract requirement for plans at the “100 percent design stage” as compelling Romala to submit plans more detailed than those contained in its bid. Romala makes three major arguments in support of this contention, and each and every one of them is frivolous.
 

 First, Romala argues that the contract could not possibly be construed to require 100 percent plans because the Postal Service knew that Romala intended to construct its prototype facility. Citing the prototype drawings it submitted with its bid, Romala argues that “it should have been clear to the Postal Service that Romala was not going to construct the facility in Dragoon, Arizona, based on the standard drawings that were part of the bid package, but instead was going to construct the facility based on its prototype drawings.” Brief for Appellant at 15. This argument is a non-sequitur. Even assuming such knowledge is justifiably imputed to the Postal Service, it is completely irrelevant. The Postal Service has never claimed, and the Claims Court did not hold, that the prototype
 
 facility
 
 could never be acceptable, only that the contract explicitly required Romala to submit more detailed
 
 plans
 
 of that facility before construction could commence.
 

 
 *1223
 
 Though this illogic is pointed out by the government in its brief, Brief for Appellee at 14-17, Romala in its reply brief does not address the government's contentions. Instead, Romala mischaracterizes the government’s argument. Citing generally to pages 14-17 of the government’s brief, Romala states: “The Postal Service in its Brief claims that Paragraph 10 ... and the requirements as set out in the bid package control in this case
 
 because
 
 Romala did not make it clear to the Postal Service when it submitted its bid on the Agreement to Lease that it
 
 intended on bidding its prototype building
 
 that Romala had supplied for the Postal Service in the past.” Reply Brief for Appellant at 2 (emphasis added). Such a claim does not appear in the cited, or any other, portion of the government brief. On the contrary, the government nowhere alleges that the Postal Service did not know that Romala intended to deliver its prototype
 
 facility,
 
 only that the contract required more detailed
 
 plans
 
 of that facility: “Romala’s offer to supply plans at the 100 percent design stage was not inconsistent with Romala’s enclosing its prototype plans with its offer, because Romala’s offer did not state that Romala intended for its prototype plans to be its sole submission of plans.” Brief for Appellee at 16. Nor did the government imply any causal connection between its knowledge of what Romala intended to build and its right to 100 percent plans. Accordingly, Romala’s statement of the government’s position is grossly inaccurate.
 

 Romala’s second main argument for reversal of the Claims Court’s contract interpretation is equally frivolous. Romala argues that its October 11, 1984 letter, submitted with its bid, added contract terms which “superseded” the requirements of paragraph 10, and cites the Restatement of Contracts for the proposition that added terms (like its letter) are given greater weight than standardized printed terms (like paragraph 10) in cases of inconsistency. This argument is irrelevant because it is based on the false premise that there
 
 was
 
 inconsistency in the contract. Romala does not even attempt to explain how its letter is inconsistent with paragraph 10 or anything else in the contract. Instead, it attempts to bolster its argument by misrepresenting the holding of the Claims Court. Romala states, without citation to the court’s opinion, that “the Court ruled that paragraph 10 in the form contract Agreement to Lease
 
 superseded
 
 the typewritten information described above in paragraph 2 and also
 
 superseded the letter dated October 11, 1984,
 
 submitted with Romala’s bid.” Brief for Appellant at 16 (emphasis added). This statement is completely inaccurate and without foundation in the court’s opinion. The court nowhere stated or even implied that paragraph 10 “superseded” anything. On the contrary, to the extent that the court addressed the issue at all, it indicated that there was nothing to supersede because the letter was
 
 not inconsistent with
 
 paragraph 10 of the agreement: “the October 11 letter makes no reference to the prototype being considered a 100% submission.”
 
 Romala,
 
 20 Cl.Ct. at 440.
 

 Romala’s third and final major argument, concerning its prior course of dealing with other postal officials, in other parts of the country, on other contracts, is also irrelevant to the basis of the Claims Court’s decision. Romala contends that its prior dealings with the Postal Service established a common understanding and that the express contract provisions must be interpreted in light of this understanding. Specifically, Romala contends that “as a result of prior [sic] course of dealing, of using Romala’s prototype drawings, the parties are
 
 required
 
 to use those drawings in this case.” Brief for Appellant at 19 (emphasis added). But in both its briefs Romala avoids the real issue of whether its
 
 plans,
 
 as opposed to its prototype
 
 facility,
 
 were sufficient to meet the contract’s requirements: It cites only the non-dispositive and probably irrelevant fact that “Romala has constructed its prototype buildings and facilities” in previous contracts with the Postal Service (all in the eastern United States) “where the Agreements to Lease required final drawings and/or using Postal Service
 
 *1224
 
 drawings,” Reply Brief for Appellant at 5.
 
 [1]
 
 Romala does not even attempt to demonstrate that the purported prior course of dealing established in law or fact that its standard prototype
 
 plans
 
 must be accepted as final, 100 percent design stage plans, and thus fails to explain why the Claims Court’s finding of fact that no such common understanding existed was clearly erroneous.
 
 [2]
 

 In sum, Romala consistently avoids
 
 addressing
 
 what is clearly the actual basis of the Claims Court’s judgment, much less pointing to anything in that judgment that is arguably wrong or offering a cogent argument for reversal. Most seriously of all, some of Romala’s arguments are based on misrepresentations and distortions of its opponent’s arguments and the Claims Court’s opinion. We have held that even the presence of a few non-frivolous arguments does not prevent an appeal as a whole from being deemed frivolous.
 
 In re Perry,
 
 918 F.2d 931, 934-35 (Fed.Cir.1990). Here, Romala fails to advance
 
 any
 
 non-frivolous argument for reversal. Without deciding whether a non-frivolous argument for reversal
 
 could
 
 have been made, we hold that Romala’s appellate conduct, including its numerous irrelevant arguments,
 
 see Finch,
 
 at 1582, and its “distortion and disregard of the record,”
 
 Devices for Medicine v. Boehl,
 
 822 F.2d 1062, 1068-69 (Fed.Cir.1987), is sufficiently egregious to render its appeal frivolous as argued.
 

 In reaching this conclusion we are mindful of the principle that sanctions should never lightly be imposed. As we have on other occasions noted, a meritless appeal is by no means necessarily a frivolous one— “[a]n appeal having a small chance for success is not for that reason alone frivolous.”
 
 Finch,
 
 at 1578 (citing
 
 Connell v. Sears, Roebuck & Co.,
 
 722 F.2d 1542, 1554 (Fed.Cir.1983)). Questionable conduct, we are well aware, may be due simply to the inexperience or over-enthusiasm of counsel, and we shall not award sanctions “so freely as to make parties with legitimately appeal-able issues hesitant to come before an appellate court.”
 
 See Finch,
 
 at 1578. But the appellate tactics for which we here sanction Romala, consisting almost entirely of irrelevant and misleading arguments as well as outright misrepresentations, exceed all permissible bounds of zealous advocacy and have been repeatedly condemned.
 
 See Finch,
 
 at 1578-79 (cataloguing examples of misconduct that have been deemed sanctionable by this and other appellate courts).
 

 As we have noted, “[a] frivolous appeal imposes costs not only upon the party forced to defend it, but also upon the public whose taxes supporting this court and its staff are wasted on frivolous appeals.”
 
 Id.
 
 at 1578. This is particularly true in a case such as this one, in which a party has misrepresented the holding of the trial court and misstated the opposing party’s principal position. By forcing the court to expend extra time and effort in carefully double-checking every reference to the record and opposing counsel’s briefs, lest we be misled, such argumentation threatens the integrity of the judicial process and increases the waste of resources. As regular readers of appellate decisions are no doubt aware, this and other circuit courts have taken an increasingly firm stand against frivolous appeals. As Judge Posner of the Seventh Circuit has stated,
 

 the frequency with which federal judges are imposing sanctions for abuse of federal court process has increased markedly in recent years. The reasons are systemic. As the federal courts become more and more overloaded, the costs imposed on ethical and responsible litigants
 
 *1225
 
 when judicial resources are diverted to the processing of frivolous claims and defenses mount higher and higher. Moreover, as the bar and the judiciary both expand, the incentive for self-regulation by lawyers that comes from appearing regularly before the same judges diminishes, making judicial regulation by sanctions increasingly necessary. We are in a transitional period, and some members of the bar still do not realize that the judicial attitude toward attorney misconduct has stiffened. They had better realize it.
 

 Hill v. Norfolk and Western Ry.,
 
 814 F.2d 1192, 1203 (7th Cir.1987). Even in a case in which it
 
 might
 
 be possible to file an arguably meritorious appeal, so that an appeal is not frivolous as filed, we may deem an appeal frivolous as argued, and award sanctions, where, as here, the arguments made in support of it are predominantly irrelevant or illogical, and rest in large part on serious misstatements and distortions.
 

 We turn next to the question of who precisely is to be held responsible for sanctionable misconduct. Frivolity in argument is no doubt attributable at least as much to tactical decisions made by an attorney in writing briefs as to the overall appellate strategy to which the client may specifically consent.
 
 See Hill,
 
 814 F.2d at 1201 (“We also do not suppose, however, that a railroad brakeman is responsible for frivolous legal arguments, so we are minded to order Hill’s counsel to bear personally the expense incurred by the railroad____”). At the same time, it is well settled that a client is bound by the acts or omissions of his or her lawyer,
 
 e.g., Link v. Wabash R.R. Co.,
 
 370 U.S. 626, 633-34, 82 S.Ct. 1386, 1390-91, 8 L.Ed.2d 734 (1962). Though the language of Rule 38 does not explicitly provide for sanctions against attorneys, there is ample precedent in this and other circuits for imposing Rule 38 sanctions on an attorney as well as on the client.
 
 E.g., Pac-Tec, Inc. v. Amerace Corp.,
 
 903 F.2d 796, 804-05 (Fed.Cir 1990) (imposing joint and several liability);
 
 Hill,
 
 814 F.2d at 1201;
 
 Westinghouse Electric Corp. v. NLRB,
 
 809 F.2d 419, 425 (7th Cir.1987);
 
 Hagerty v. Succession of Clement,
 
 749 F.2d 217, 223 (5th Cir.1984),
 
 cert. denied,
 
 474 U.S. 968, 106 S.Ct. 333, 88 L.Ed.2d 317 (1985) (sanctions to be apportioned between attorney and client on remand). Where the frivolity in an appeal lies not in the filing of the appeal, but in the type of argument employed in support of it, it is appropriate to hold not only the appellant but also its attorney responsible for this conduct. We therefore .hold Romala’s counsel liable jointly and severally with Romala for the payment of the sanction we impose.
 

 We also note that Romala and its attorneys cannot escape a determination of frivolity by the decision to waive oral argument and submit the case on the briefs.
 
 [3]
 
 While the cost to the appellee and the burden on this court’s resources may be reduced somewhat by a decision to waive argument, the general policies behind Rule 38 — compensating the prevailing party for the costs of having to defend a frivolous appeal and keeping the appellate calendar free for cases truly worthy of consideration,
 
 see Finch,
 
 at 1578 — are no less important in cases submitted on the briefs than in those on which oral argument is heard. The Department of Justice has been forced to expend time and effort in defending this appeal, and this court has had to devote its energy and resources to the process of considering these arguments. Waiving oral argument may have lessened somewhat the
 
 degree
 
 of damage done, but it has by no means eliminated it.
 

 The United States has not asked for sanctions under Rule 38 in this case, and the issue was not briefed by the parties. While our Practice Note to Rule 38 invites appellees to call instances of frivolity to our attention, this is by no means the only way the issue may arise. In appropriate cases, we are free to award sanctions
 
 sua sponte. See, e.g., Reis v. Morrison,
 
 807 F.2d 112, 113 (7th Cir.1986) (“[W]e have
 
 *1226
 
 decided to use our authority under Rule 38 of the Federal Rules of Appellate Procedure to award attorney’s fees on our own initiative____”).
 

 Moreover, the subjective intent of Romala and its attorneys in making irrelevant arguments and grossly inaccurate statements is immaterial: “The standard under Rule 38 is an objective one and has nothing to do with the mental state of the person sanctioned.”
 
 In re Perry,
 
 918 F.2d at 934.
 
 [4]
 
 The controlling consideration in the imposition of sanctions, then, is the consistently inaccurate and irrelevant character of Romala’s assertions of fact, which is clear on the face of the briefs and for which no exonerating explanation is possible. Since our imposition of sanctions is thus based on a frivolity that is wholly contained within the written submissions, no separate briefing or argument on the issue would be useful.
 
 See In re Perry,
 
 918 F.2d at 934. Indeed, to require additional briefing or hearings in cases such as this one “would impose on the opposing party and on the court an even greater burden in dealing with a frivolous appeal and entirely defeat the purpose of Rule 38.”
 
 Toepfer v. Department of Transp., FAA,
 
 792 F.2d 1102, 1103 (Fed.Cir.1986) (citing
 
 Hyde v. Van Wormer,
 
 474 U.S. 992, 106 S.Ct. 403, 88 L.Ed.2d 355 (1985), in which the Supreme Court awards sanctions under its rule 49.2 without a hearing).
 

 Nor does due process require any specific notice or opportunity for additional briefing or a hearing prior to imposition of Rule 38 sanctions under the circumstances presented here. The due process requirement of adequate notice is satisfied by the elementary principle that “[practitioners in this court are expected to know and follow the Federal Rules of Appellate Procedure and the precedents in the court’s published jurisprudence,” including Rule 38 and our lengthy line of decisions applying it in appropriate cases.
 
 In re Perry,
 
 918 F.2d at 935 (upholding imposition of sanctions and listing some of our precedent, most of which predates the briefs in this case). These decisions include
 
 Mathis v. Spears,
 
 857 F.2d 749, 761 (Fed.Cir.1988), in which we imposed sanctions based on “record distortions, manufactured facts, and implausible and unsupportable legal arguments,” and
 
 Devices for Medicine v. Boehl,
 
 822 F.2d 1062, 1068-69 (Fed.Cir.1987), where we sanctioned an appellant’s “spurious and specious arguments and its distortion and disregard of the record and opposing authorities.”
 
 See also Hill,
 
 814 F.2d at 1202 (“The text of Rule 38, and our previous decisions applying it, provide all the notice that an attorney could reasonably demand that sanctions may be imposed on counsel directly for the making of frivolous legal arguments in this court____”).
 

 As for the other due process requirement, opportunity to be heard, we note that Romala is not entitled to an opportunity for written or oral explanation— we need afford no opportunity to explain misstatements and distortions in the briefs when their inaccuracy is apparent and no possible explanation could justify their inclusion. As the Seventh Circuit has said,
 

 we believe absolutely that an attorney ordered to pay money as a sanction for the filing of a frivolous suit or appeal is entitled to due process of law, and that this entitlement includes an opportunity for a hearing if a factual question concerning [sic] the propriety of sanctions is raised____ But obviously the right to a hearing ... is limited to cases where a hearing would assist the court in its decision.
 
 Where,
 
 as in this and most Rule 38 cases,
 
 the conduct that is sought to be sanctioned consists of making objectively groundless legal arguments in briefs filed in this court, there are no issues that a hearing could illuminate.
 
 All the relevant “conduct” is laid out in the briefs themselves; neither the mental state of the attorney nor any other factu
 
 *1227
 
 al issue is pertinent to the imposition of sanctions for such conduct.
 

 Hill,
 
 814 F.2d at 1201-02 (citations omitted) (emphasis added).
 

 Pursuant to Fed.R.App.P. 38, we award sanctions to the United States constituting double its costs (though not its attorney-fees) incurred in defending this frivolous appeal, for the payment of which Romala is liable jointly and severally with its counsel.
 

 CONCLUSION
 

 Because the Claims Court’s construction of the contract was correct and none of its findings of fact have been shown to be clearly erroneous, the judgment appealed from is affirmed. And because the appeal is frivolous as argued, sanctions of double the government’s costs are imposed pursuant to Fed.R.App.P. 38, for the payment of which Romala is liable jointly and severally with its attorney.
 

 AFFIRMED — SANCTIONS IMPOSED.
 

 [1]
 

 . These facts are non-dispositive or irrelevant both because the earlier officials could always waive contract requirements, as they may have done, and because, in any event, they were different officials whose actions cannot bind the postal officials who negotiated
 
 this
 
 contract.
 

 [2]
 

 . Moreover, if Romala were seeking to suggest that having accepted its prototype buildings before, the Postal Service is estopped from demanding compliance with the contract’s requirement of 100 percent design stage plans, its argument would be a non-sequitur for the same reason it is irrelevant to contract interpretation. Nor does Romala cite any authority that would support such a position.
 

 [3]
 

 . Oral argument was originally requested and scheduled in this case. Shortly before the argument, however, its counsel notified the court that Romala had elected to submit its appeal on the briefs instead.
 

 [4]
 

 . Indeed, we
 
 assume
 
 that counsel in this appeal argued in good faith without attempting to deceive the court. The important point is that the arguments were irrelevant and based on misstatements, and thus
 
 could
 
 have misled the court, no matter how innocent counsel's subjective intent.