George PEABODY; Citizens Right of Way Dedication at Pukoo Committee, Plaintiffs–Appellees,

v.

MAUD VAN CORTLAND HILL SCHROLL TRUST, Defendant,

and

James M. Dombroski, Defendant–Appellant.

No. 88–2796.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 3, 1989.

Decided Sept. 5, 1989.

As Amended on Denial of Rehearing and Rehearing En Banc Jan. 23, 1990.

Mark Herrmann, Steinhart & Falconer, and John H. Boone, San Francisco, Cal., for defendant-appellant.

William W. Ramos–Saunders, Bickerton, Ramos–Saunders & Dang, and Boyce R. Brown, Jr., Honolulu, Hawaii, for plaintiffs-appellees.

Before GOODWIN, Chief Judge, HUG, and TANG, Circuit Judges.

GOODWIN, Chief Judge:

After a failed attempt to remove a case to federal court, Attorney Dombroski filed a second removal petition, presenting arguments the district court had previously re-jected. The district court again ruled that the case belonged in state court, and imposed sanctions on the attorney. Dombroski appeals the sanctions.

## I. FACTS and PRIOR PROCEEDINGS

The underlying action involved a claimed public right of access to Pukoo Lagoon, located on the southeastern shore of the island of Molokai. The lagoon was formerly a fishpond used by native Hawaiians to catch and breed fish. In the 1970s, the then-owner of Pukoo fishpond, Canadian–Hawaiian Developers ("CHD"), decided to dredge and fill the fishpond to convert it into a cloverleaf-shaped lagoon and beach for the hotel and condominium resort CHD was constructing at the site.

Pursuant to 33 U.S.C. § 403 (1982), a dredging permit from the United States Army Corps of Engineers ("the Corps") was required. The Corps issued a permit conditioned on CHD's allowance of "the full and free use by the public of all navigable waters at or adjacent to the structure or work authorized by this permit." CHD completed the offshore dredging work, and later dredged the fishpond itself (for which no permit was needed) to create Pukoo Lagoon.

In 1980, the Maud Van Cortland Hill Schroll Trust ("the Trust"), defendant below, bought Pukoo Lagoon and cancelled the resort development plans. The Trust also obtained zoning downgrades for the property for the asserted purpose of preserving Pukoo Lagoon.

In September of 1983, plaintiffs/appellees George Peabody, a commercial charter boat operator, and Citizens Right of Way Dedication at Pukoo Committee (referred to collectively as "Peabody") sued the Trust in Hawaii state court. Peabody alleged three causes of action, all of which sought public access to the Trust's property.

Only Count I is relevant to this appeal. Count I alleged certain rights of access over water into the interior waters of Pukoo Lagoon. It stated in pertinent part:

7. The dredging and [filling] which created Pukoo Lagoon also resulted in the waters within the lagoon becoming navigable waters to which the public has a right of full and free use. Exhibit 3 hereto is an opinion letter from the Chief Counsel, U.S. Army Corps of Engineers, Honolulu District confirming that the waters within Pukoo Lagoon are navigable waters to which the public is entitled to full and free use by virtue of subparagraph (k) of dredging permit DA Permit No. 969.

\*　　\*　　\*　　\*　　\*　　\*

9. [The Trust,] as successor in interest of [CHD], is subject to the terms and conditions of DA Permit 969.

10. Plaintiffs are entitled to an injunction directing [the Trust] to cease and desist its denial of full [and] free use of Pukoo Lagoon's waters by the public.

In December of 1983, the Trust removed the action to the federal district court, alleging federal question jurisdiction. For reasons not explained, the case lay fallow in federal court for some three and one-half years. Trial was set for June 23, 1987. On June 10, Peabody moved to remand to state court.

In his Motion to Remand, Peabody asserted that Count I involved a contractual issue only. He argued that "[t]he fact that parties include the language of federal law in their contract does not transmute the [alleged] breach into one 'arising under' the laws of the United States, even though an interpretation of the language of the contract will involve an interpretation of language that is also a federal statute." On July 10, 1987, the district court granted Peabody's Motion to Remand, and decided the original grounds for removal had been shown to be inapplicable to the case.

The Hawaii state court set trial for March 28, 1988. Peabody filed a First Amended Complaint on January 11, 1988, adding neither new claims nor new parties. During the following two months, Dombroski filed in the Hawaii court a series of some seven motions for the Trust, three of which were denied, and four of which were never ruled upon. He also filed a Petition for an Extraordinary Writ with the Hawaii Supreme Court, which was summarily denied. On March 14, 1988, fourteen days before the state court trial date, Dombroski filed a Third Party Complaint in the state court against several United States Government parties, and filed a second Petition for Removal with the federal district court.

On April 22, 1988, Peabody filed his second Motion to Remand, together with a Motion for Sanctions. The district judge heard oral argument on the motions, and on May 9, 1988, entered his Order Granting Motions to Strike Third Party Complaint, to Remand Case to State Court and to Impose Sanctions ("Order Granting Remand"). The court imposed the sanctions requested by Peabody, ordering Dombroski to pay to Peabody the fees incurred as a result of the improper removal, and suspending him from the practice of law for a period of not more than six months, pending the report of an ad hoc Committee on Discipline. The monetary sanctions were imposed against Dombroski alone, and the court specified that the Trust was not to pay any portion of them.

The underlying case is currently pending in Hawaii state court. Dombroski appeals the sanctions against him. We have jurisdiction under 28 U.S.C. § 1291 (1982) to review the imposition of sanctions because the order appealed from is a final order and the appeal was timely. Any review of the underlying remand order, however, is barred. 28 U.S.C. § 1447(d) (1982).

## II. DISCUSSION

Dombroski's central argument is that sanctions against him were not warranted because his Petition for Removal was properly supported by law. If we were assiduously to address his argument, we would be required impermissibly to review an order remanding a case to state court. 28 U.S.C. § 1447(d); *Gravitt v. Southwestern Bell Tel. Co.*, 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977). However, where, as here, a motion is sanctioned for being frivolous, effective review of the sanctions re-

quires examination of the moving party's "good faith belief in the merit of a legal argument." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830–31 (9th Cir.1986).

Peabody's position—that we simply cannot examine the legal basis of the removal petition because that would constitute reviewing a remand order—would effectively block any appellate review of sanction awards related to removal petitions. In *Lemos v. Fencl*, 828 F.2d 616 (9th Cir. 1987), we considered two arguments challenging a sanction award for a frivolous removal. The first was that the petition for removal was valid as a matter of law. This question, we said, could not be decided because a district court remand of a case to state court is not reviewable by the court of appeals. 828 F.2d at 617. The second argument was that the petition did not violate Rule 11 because it was not frivolous. In evaluating this argument, we did examine the legal argument on which the appellee had based his Petition for Removal. *See id.* at 618–19. We did not pass on whether the appellee's position in his Petition was correct—which would have amounted to a review of the district court's remand order—but our examination allowed us to conclude that the argument was neither "frivolous ... [nor] legally unreasonable." *Id.* at 619.

This fine line is not one we need walk in the context of this case because we find the arguments Dombroski made in the Trust's Petition for Removal had been rejected previously by the district court. A second presentation of the same, previously rejected, theory to the same court fairly defines "frivolous." Unless Dombroski can show some relevant change subsequent to the first remand, the sanctions award was proper.

Dombroski alleges that such a change occurred. He claims that Peabody's Motion for Partial Summary Judgment made clear that Peabody was relying on a federal claim rather than a state claim, and therefore the circumstances had changed sufficiently to allow the Trust a second bite at the federal-forum apple. Peabody counters with two points: (1) the Petition for Re-

moval was frivolous because Peabody's Motion for Partial Summary Judgment represented no change in his pleading, and (2) even if it did, the Petition was untimely. Although Peabody's second point is unavailing, his first is dispositive.

## A. *Timeliness of the Petition for Removal*

█ A petition for removal must be brought within 30 days after the receipt by the defendant of a copy of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b) (1982). Dombroski claims his March 14, 1988, Petition for Removal was timely because it was filed within 30 days of Peabody's Motion for Partial Summary Judgment as to Count I in the Hawaii court, which is the paper he claims provides the substantive basis of his Petition. However, Peabody had filed a practically identical motion on June 10, 1987, in federal court. Even if it were true that the later, state court Motion for Partial Summary Judgment constituted a paper that indicated the case was removable, Peabody argues, then the earlier, federal court Motion must have given the same indication, and a timely Petition for Removal would have had to have been filed within 30 days of the earlier Motion.

Peabody's argument overlooks the fact that, since the earlier Motion for Partial Summary Judgment was filed *in* federal court, the Motion could not trigger a right to remove *to* federal court. The federal summary judgment papers never became part of the state court record. They were filed simultaneously with Peabody's Motion to Remand, which the district court granted apparently without ruling on the Motion for Partial Summary Judgment. "[T]he record of the state court is considered the sole source from which to ascertain whether a case originally not removable has since become removable." 1A J. Moore & B. Ringle, *Moore's Federal Practice* ¶ 0.168[3.–5–6], at 598–99 (1987).

Dombroski's Petition for Removal was not untimely.

### B. Frivolousness of the Petition for Removal

#### 1. Peabody's Motion for Partial Summary Judgment

Dombroski argues that Peabody's Motion for Partial Summary Judgment was based solely on a federal cause of action, which occurred with Peabody's invocation of the federal common law of navigational servitudes. Therefore, he asserts, he correctly petitioned to remove the case to federal court. Reference to the Motion indicates that Peabody may have intended to invoke federal common law.[1] The Motion was, however, part of the papers filed with the district court at the time it granted Peabody's second Motion to Remand.[2] The fact that the district court granted that Motion indicates that it did not find there to be any federal claim in the case, notwithstanding the arguments of Peabody's Motion for Partial Summary Judgment. Therefore, we may not now independently consider the Motion for Partial Summary Judgment and decide whether, contrary to his prior representations, Peabody had altered his case to rely on federal common law. Such a determination would amount to a reevaluation of the district court's Order Granting Remand. Because we may not conduct this type of review, *see Lemos,* 828 F.2d at 617, we focus instead on Dombroski's Petition for Removal to answer the question whether the Petition was frivolous.

#### 2. Dombroski's Petition for Removal

■ The district court reasoned that because the grounds raised by Dombroski in the second Petition for Removal were the same as those in the first Petition for Removal—grounds the court specifically rejected in its July 10, 1987, Order Granting Remand—Dombroski's Petition was frivolous. Because Dombroski's second Peti-

tion for Removal makes no argument that can be supported by the theory he presses on appeal—to wit, that Peabody's Motion for Partial Summary Judgment proceeded on a wholly federal claim—the district court correctly imposed sanctions.

Both Petitions for Removal allege that a federal question exists by reference to (1) 33 U.S.C. § 403, which is the statute that authorizes the Corps to issue permits such as the dredging permit obtained by CHD [ER 49–50 & 140]; and (2) the takings clause of the fifth amendment. [ER 52 & 144–45]. Since these two arguments had been made in the first Petition for Removal, the court's July 10, 1987, Order Granting Remand renders them unavailable as *res judicata. See Cannon v. Loyola Univ. of Chicago,* 784 F.2d 777 (7th Cir. 1986) (dismissal of applicant's prior suits against medical schools challenging denial of her application barred subsequent action alleging that denial was unlawful under Title IX, and attorney's costs and fees were warranted), *cert. denied,* 479 U.S. 1033, 107 S.Ct. 880, 93 L.Ed.2d 834 (1987). Only if a change occurred in Peabody's case that would make these arguments relevant could Dombroski in good faith petition for removal. *See Fritzlen v. Boatmen's Bank,* 212 U.S. 364, 372, 29 S.Ct. 366, 369, 53 L.Ed. 551 (1909) (if, after remand, subsequent pleadings or conduct of parties indicate cause is removable, right of removal upon second application is not controlled by the previous remand order).

On appeal, Dombroski identifies only one changed element in the case as permitting him properly to attempt to remove: the allegedly new reliance on federal common law revealed by Peabody's Motion for Partial Summary Judgment. Certainly neither of the two grounds above—33 U.S.C. § 403 or the takings clause—can be justified on that basis. Furthermore, notably absent in Dombroski's second Petition for Removal is

---

1. Even if Peabody intended to invoke federal common law, the Motion for Partial Summary Judgment did not rely on federal common law as its sole basis, as Dombroski asserts. It also invokes the theory that Peabody and his co-plaintiffs were third-party beneficiaries of the dredging permit issued by the Corps.

2. Dombroski claims that Peabody specifically disclaimed reliance on federal law to support his Motion to Remand. If this is true, it would appear to provide an estoppel argument should Peabody try to proceed on a disclaimed federal ground in state court.

any allegation that Peabody's alleged invocation of federal common law regarding navigational servitudes confers jurisdiction under any statute other than 33 U.S.C. § 403, which had already been rejected.

We conclude that the second Petition for Removal was frivolous because its basis had previously been rejected by the district court.

## C. *Appropriateness of Sanctions Imposed*

█ When the district court suspended Dombroski from practice, invoking its inherent power, it took note of two other cases in which Dombroski had been sanctioned, and stated, "[I]t appears that monetary sanctions alone are not fully effective in deterring Dombroski from sanctionable conduct." [ER 258] Dombroski argues that the court's reliance on these earlier sanctions was improper. We need not determine whether these previous sanctions were properly considered, as we find sufficient support elsewhere for the court's action in suspending Dombroski.

When imposing sanctions under its inherent power to promote the orderly and just administration of its caseload, the district court must follow its own rules, *see In re Thalheim*, 853 F.2d 383, 389 (5th Cir.1988); make a finding of bad faith, *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766–67, 100 S.Ct. 2455, 2464–65, 65 L.Ed.2d 488 (1980); and afford due process, *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 916 (9th Cir.1987).

The District of Hawaii's Local Rule 110–6 provides in part:

(a) For good cause shown and after an opportunity to be heard, any member of the bar of this Court may be disbarred, suspended from practice for a definite time, reprimanded, or subjected to such other discipline as the court may deem proper.

Thus, the requirements of the District of Hawaii's court rule are subsumed in the due process requirement. Judge Fong recognized the need to afford due process to Dombroski, stating that "[e]xtraordinary safeguards are obviously required here." [ER 256] He found that Dombroski had "received the extraordinary measure of protection to which he is entitled." [ER 256] In support of this finding he cited the extent of the period during which Dombroski had notice sanctions might be imposed and the length and thoroughness of both Dombroski's briefs and oral argument in opposition to the sanctions. [ER 256–57]

Judge Fong also made a separate finding of bad faith. [ER 257, 252] The judge stated, "The fact that Mr. Dombroski removed this action in the face of a number of factors indicating that removal was improper and *after attempting repeatedly and without success to delay an impending trial* on the merits, demonstrates a flagrant misuse of the judicial process." [ER 252] (Emphasis added.) His mention of Dombroski's attempts to delay the trial on the merits refers to the series of undoubtedly harassing motions brought during the two months before the trial date in state court. *See supra* page 4.

A federal court's inherent power to sanction attorneys practicing before it is in general related to management of its own docket. *Cf. Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962) (authority of a federal trial court to dismiss a plaintiff's action for failure to prosecute necessary "in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts").[3] On the other hand, we have recognized that federal courts have a broader duty to the public, as well. *Standing Comm. on Discipline v. Ross*, 735 F.2d 1168, 1170 (9th Cir.) (citing *Ex parte Wall*, 107 U.S. 265, 2 S.Ct. 569, 27 L.Ed. 552 (1883)), *cert. denied*, 469 U.S. 1081, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984).

Here, it appears the district court was acting to further both objectives. We find no abuse of discretion in the district court's taking judicial notice of Dombroski's beha-

---

**3.** Similarly, Rule 11 sanctions can be imposed only for actions taken in federal court. *Hurd v.* *Ralphs Grocery Co.*, 824 F.2d 806, 808 (9th Cir. 1987).

viour, whether in state or federal court, during the course of the case before it.

The judgment of the district court is AFFIRMED.