Stephen **YAGMAN**, Plaintiff,

v.

**REPUBLIC INSURANCE**
**et al., Defendants.**

**No. CV 91–423–R (WDK).**

United States District Court,
C.D. California.

May 31, 1991.

Entered June 4, 1991.

Stephen Yagman, Yagman and Yagman, P.C., pro se.

Ramsey Clark, New York City, for respondent Stephen Yagman.

## ORDER RE SANCTIONS AGAINST STEPHEN YAGMAN

KELLER, District Judge.

### I. Introduction

This Court has issued three Orders to Show Cause re sanctions against Stephen Yagman, an attorney representing himself, based on papers he filed in connection with his motion to recuse Chief Judge Real in the matter of *Stephen Yagman v. Republic Insurance*, CV 91–423–R. Yagman, now represented by counsel, filed a response on April 11, 1991 (the "Response") to this Court's Orders of March 27 and April 3, 1991 in which he purports to show cause why he should not be sanctioned. Yagman also requested a continuance of the hearing date, which request was granted. Oral argument was heard on April 14, 1991.

For the following reasons, the Court finds that Yagman has not shown cause why he should not be sanctioned for the reasons expressed in this Court's previous orders. Rather, this matter exemplifies the need and purpose for Rule 11 of the Federal Rules of Civil Procedure, 18 U.S.C.

§ 401, and the inherent power of the Court to impose sanctions. Stephen Yagman has abused the judicial system by prosecuting this matter in an improper and frivolous manner.

Sanctions against attorneys play the unpleasant but vital role of protecting the integrity of the federal court system by deterring those inclined to abuse it. This matter is an egregious example of poor lawyering and conduct unbecoming an officer of this Court. In the course of prosecuting one single motion, Yagman occasioned three Orders To Show Cause why he should not be sanctioned. This Court has been required to spend more time addressing these sanctions issues than it did on the underlying motion—time which would otherwise have been devoted to other litigants. The Court finds that Stephen Yagman has violated the provisions of Rule 11 of the Federal Rules of Civil Procedure. In addition to being sanctioned for these violations, Yagman is sanctioned under 18 U.S.C. § 401 and the inherent power of the Court to impose sanctions.

## II. Background

By Order of March 27, 1991 136 F.R.D. 652, Yagman was ordered to show cause why he should not be sanctioned for mischaracterizing the matter of *Manuel L. Real, Chief Judge, United States District Court for Central District of California v. Stephen Yagman,* which case he attempted to use as the sole basis for recusal, and which he improperly characterized as "Judge Real sued me *personally.*" (emphasis in original).

Yagman did not provide any details of that case, or any support for his conclusory statement that there is a well-known public controversy between him and Judge Real.[1] After failing on four occasions to explain his position, Yagman was Ordered by Minute Order dated March 19, 1991, to provide documents relating to the petition for writ

of certiorari. Yagman responded to the Court's Order with a contumacious one-page brief wherein he refused to produce those documents. Accordingly, Yagman was ordered to show cause why he should not be sanctioned for disobeying the Court's Order.

Finally, Yagman was ordered on April 3, 1991 to show cause why he should not be sanctioned for failing to notify the Court of his prior motion under 28 U.S.C. § 455 to recuse Judge Real, which motion was denied by Judge Davies by Order dated August 31, 1989.

## III. Analysis

### A. *Yagman's citation and description of Judge Real's petition for a writ of certiorari.*

(1) This Court's Order To Show Cause

In the March 27 Order, this Court stated:

In the four opportunities given Yagman to explain his position, he has failed to advise the Court as to the nature of *"Manuel L. Real etc. v. Stephen Yagman."* Nor did Yagman dispute the observation made by the Court that filing a writ of certiorari, as Judge Real did, may have been the only way for Judge Real, a district judge, to challenge the Circuit's decision to reassign the remand. Yagman has offered no facts which suggest that *"Manuel L. Real etc. v. Stephen Yagman"* involved him in any way other than a named party. In substance, it was surely a dispute between Judge Real and the Ninth Circuit. The fact that Yagman failed in each instance to cite the full entitlement of the writ of certiorari belies the good faith of his argument. The denial of certiorari in *Matter of Yagman,* found at 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987), is entitled *Manuel L. Real, Chief Judge, United States District Court for Central District of California v. Stephen Yag-*

---

1. Yagman did not provide this Court with any documentary evidence of a public dispute between him and Judge Real. The Court was compelled to rule on his recusal motion solely on the basis of *Matter of Yagman,* 796 F.2d 1165 (9th Cir.,1986). The recusal motion was denied

and Yagman filed an Emergency Petition for Mandamus ("Mandamus") with the Ninth Circuit. Exhibit 7 to that mandamus petition contains approximately 47 pages of newspaper clippings never presented to this Court.

*man.* By using "etc." to replace the title of Chief Judge—the capacity in which Judge Real brought suit—Yagman, it seems, hoped to mislead this Court into accepting his characterization that "Judge Real sued me *personally.*" (emphasis in original).

(2) The reality of *"Real v. Yagman"*

In his Response, Yagman admits that Judge Real's petition for certiorari "set forth a dispute between Judge Real and the Ninth Circuit." In fact, he concedes that Judge Real's petition concerned an altogether different case.

The supplemental papers filed on behalf of Yagman make clear the following, for the first time:

Before the Ninth Circuit ordered Judge Real to randomly reassign *Brown v. Baden,* the case in which Judge Real sanctioned Yagman, Judge Real was embroiled in a dispute with the Ninth Circuit about the Circuit's authority to order reassignment. That dispute arose from a petition for writ of mandamus filed by Judge Real in 1986 following the Court of Appeals' decision in *United States v. Sears, Roebuck & Co.*[2] to remand that case to a different judge.

Before the Supreme Court ruled on Judge Real's petition for mandamus, the Ninth Circuit issued *Matter of Yagman,* ordering Judge Real to reassign the case. Judge Real refused to comply with that order and stayed the matter until the Supreme Court ruled on his petition for mandamus. That petition was denied December 1, 1986. *In re Real,* 479 U.S. 982, 107 S.Ct. 604, 93 L.Ed.2d 604 (1986).

At that point, instead of complying with the Circuit's command to reassign the sanctions issue, Judge Real ordered the parties to *Brown v. Baden* (i.e. Yagman) to file briefs with him regarding the Circuit's power to order reassignment. Apparently, Judge Real ordered briefing on the same issues which he had attempted to present to the Supreme Court on mandamus, and which the Supreme Court refused to entertain.

Yagman filed a notice of appeal from Judge Real's order for further briefing, as well as an emergency motion for a stay of the order. The Court of Appeals construed the appeal and the motion as a petition for a writ of mandamus to compel Judge Real to comply with the reassignment order.

Pursuant to Rule 21 of the Federal Rules of Appellate Procedure, unless the Circuit Court denies a petition for mandamus, the appellate court must order the district judge to answer the petition. Judge Real was so ordered, and he opposed the mandamus through counsel.

On April 22, 1987, the Court of Appeals granted the writ of mandamus, directing enforcement of its previous order that the case be randomly reassigned. *Brown v. Baden,* 815 F.2d 575 (9th Cir.1987).

The Appellate Court then vacated Judge Real's order re further briefing and directed the clerk of the district court to randomly reassign the case. That order was subsequently amended so that the responsibility to reassign the case remained with the Chief Judge, not the clerk. By order dated June 26, 1987, Judge Real was ordered to follow the Appellate Court's earlier order and reassign the case.

Judge Real then petitioned the Supreme Court for a writ of certiorari to review the Ninth Circuit's decision granting the writ of mandamus requiring Judge Real to comply with the earlier order of reassignment. The Supreme Court denied certiorari. 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987).

(3) Discussion

■ The most that Yagman's lawyers can muster in his defense is the proposition that his characterization of the above as "Judge Real sued me *personally"* was ac-

---

**2.** *United States v. Sears, Roebuck & Co.,* 785 F.2d 777 (9th Cir.,1986), *cert. den., Sears, Roebuck & Co. v. United States,* 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986), *later proceeding, United States v. Sears, Roebuck & Co.,* 677 F.Supp. 1042 (C.D.Cal.1988), *rev'd United States v. Sears, Roebuck & Co.,* 866 F.2d 1128 (9th Cir.,1989), *and, rereported United States v. Sears, Roebuck & Co.,* 877 F.2d 734 (9th Cir.,1989).

curate because Yagman was required *to file further briefing.* The issue of Judge Real's Order to Show Cause was *never* presented to this Court. Yagman did not say, nor even imply, that the dispute between him and Judge Real centered on whether Yagman should be required to brief issues of interest to Judge Real.

At best, Yagman's reliance on *"Real v. Yagman"* and his characterization of that case in his moving papers as "Judge Real sued me *personally"* was grossly negligent. This Court finds that the attempt to use that case as the basis of his recusal motion was not, to the best of Yagman's knowledge, information and belief, formed after reasonable inquiry, well grounded in fact and warranted by existing law or good faith extension thereof. *See,* Fed.R.Civ.P. 11.

What is more distressing, however, is that even if his initial characterization were merely negligent, as opposed to a premeditated misrepresentation, Yagman's subsequent efforts to explain his position evidence an actual intent to mislead the Court. Yagman repeatedly refused to respond to the Court's requests for an explanation of his statement, "Judge Real sued me *personally."* Instead, he relied on obfuscation, switching the facts of *Brown v. Baden* with those of *Manuel L. Real, Chief Judge, United States District Court for Central District of California v. Stephen Yagman.* This Court's efforts to verify the truthfulness of Yagman's allegations against Judge Real, and to ascertain the nature of the dispute between them, was continually thwarted by Yagman's obdurate recalcitrance.

The Ninth Circuit addressed the gravity of such conduct when it recently suspended an attorney for misrepresenting the record:

> The vice of misrepresentation is not that it is likely to succeed but that it imposes an extra burden on the court. The burden of ascertaining the true state of the record would be intolerable if misrepresentation was common. The Court relies on the lawyers before it to state clearly, candidly, and accurately the record as it in fact exists.... Counsel's professional duty 'requires scrupulous accuracy in referring to the record.' "

*In re Disciplinary Action Boucher,* 837 F.2d 869 (9th Cir., 1988) (citations omitted), *as mod., on reconsideration* 850 F.2d 597 (9th Cir., 1988).

Accuracy is especially necessary in *ex parte* situations such as this where the Court does not have the benefit of alert opposing counsel, thereby increasing the likelihood of unwarranted success. *See, Business Guides v. Chromatic Comm. Enterprises,* —— U.S. ——, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) (Especially compelling that Rule 11 duties be met when documents are filed *ex parte).*

The egregiousness of Yagman's misuse and mischaracterization of *"Real v. Yagman"* is emphasized by Yagman's repeated unwillingness to disclose the substance of that matter. Such conduct "infects the judicial process with a disabling disease of deceit that the courts must act to expunge, for if courts remain passive, that disease will spread until it destroys a judicial process and a legal profession no longer worth preserving." *Pac–Tec, Inc. v. Amerace Corp.,* 903 F.2d 796, 800 (Fed. Cir.,1990), *motion to vacate den.,* 918 F.2d 931.

As the Supreme Court recently emphasized, "the essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a message to the district court that this document is to be taken seriously." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 111 S.Ct. at 930. Yagman rebuffed this Court's repeated attempts to take his argument seriously. Accordingly, the Court finds that Yagman's motion to recuse Judge Real signed by Yagman January 25, 1991 [3] does not satisfy the requirements of Rule 11.

■ Although the Court finds that Yagman acted in bad faith, finding such improper motive is not a prerequisite to sanc-

---

**3.** The document is actually signed January 25, 1990. It was filed February 4, 1991, and the Court is confident that the wrong year is simply a typographic error.

tioning him under Rule 11. Counsel's conduct is measured against an objective standard, not a subjective standard. *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 829 (9th Cir.,1986) (Subjective analysis of an attorney's conduct is inconsistent with the Rule's focus on "reasonableness"). As already noted, the best that can be said for Yagman is that he acted negligently, outside the bounds of a reasonable attorney. That is not enough to avoid Rule 11 liability.

■ To the extent that Yagman's conduct in this regard may not be covered by Rule 11, it is covered by the inherent power of the Court to impose sanctions for the violations described above. As explained in greater length in this Court's previous Order, federal courts possess inherent powers to impose sanctions when a party has acted in bad faith. The exercise of this inherent power is particularly appropriate upon finding that an attorney has practiced a deception on the Court. *See, Universal Oil Products Co. v. Root Refining Co.,* 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946).

B. *Yagman's disobedience of this Court's Order dated March 19, 1991.*

■ In his Response, Yagman ignores the issue posited by the Court that any ambiguity with respect to the Court's request for copies of the papers in *Manuel L. Real, Chief Judge, United States District Court for Central District of California v. Stephen Yagman* was clarified telephonically by my law clerk.[4] Rather, the Response states, *"As we now understand it* the Court's request would have been met in full by two documents: a copy of Judge Real's petition for a writ of certiorari, dated August 13, 1987 and the brief for respondent in opposition, dated October 30, 1987." *Response at 9.* (emphasis added).

The Court finds that Yagman was fully aware of the documents sought by the Court, that any ambiguity in the original order was clarified telephonically, and that his response to that order was contemptuous, filed in bad faith, and willfully disobedient. This finding is buttressed by the unsolicited "Second Supplemental Memorandum in Response to Court's Orders" filed by Yagman the day before the April 24 hearing. In it, Yagman concedes that following the telephone conversation with the law clerk, he

"looked and couldn't find copies of the certiorari petition and opposing brief to submit to the court. He found only a marked up copy of the petition."

There is no question that Yagman understood the Court Order, and rather than file a motion for an extension of time, he opted to ignore it.[5]

■ Yagman offers two wholly unpersuasive defenses for his conduct:

(1) Yagman argues that Rule 7.5.2 does not provide a basis for sanctions because it "does not speak to the duties of an attorney to furnish documents or evidence to the Court on a motion, but rather to the kinds of evidence that the Court will consider in hearing and determining motions." *Response at 9.*

This argument fails on two counts: (i) Rule 7.5.2 does speak to the duties of an attorney. The rule reads: "Factual contentions involved in any motion ... *shall be presented ...*" Thus, the Rule on its face contemplates a lawyer's duty to present evidence; and (ii) Local Rule 7.5 requires all motions to meet the requirements of Local Rule 7. Local Rule 7.19 clearly states that violation of Local Rule 7 subjects the offender to the sanctions of Local Rule 27.

(2) Yagman argues that he should not be sanctioned because "a petition to the United States Supreme Court for a writ of certiorari and a brief in opposition are doc-

---

4. *See,* Declaration of Steven J. Rottman (May 31, 1991). It is appropriate for a court to consider the conduct of the Judge's law clerk. *See, Business Guides v. Chromatic Comm. Enterprises,* 111 S.Ct. at 930.

5. Of course, were Yagman truly at a loss as to which documents the Court intended him to supply, he could have filed a motion for clarification.

uments of record, undoubtedly on deposit in law libraries in Los Angeles, very likely in the U.S. Courthouse itself, and a proper subject of judicial notice." *Response at 10.*

■ Yagman never filed a motion seeking judicial notice of the above. Furthermore, the fact that a document might be found in a law library cannot excuse a lawyer's failure to provide them. The Court will not traipse around the city in search of support for a litigant's motion. And of course, even if this were a defense to Rule 7.5.2—which it is not—it cannot possibly excuse noncompliance with a specific Court order.

Finally, this argument is inconsistent with the complaint voiced in the Response that "In the time available for the preparation of this memorandum, it has not been feasible to obtain and present and analyze in this memorandum all of the facts bearing on the availability of the documents requested." *Response at 10.* By Yagman's own suggestion, to comply with the Order he had only to visit the County Law Library.

■ Furthermore, a litigant is not free to ignore a court order because it creates "practical difficulties." Yagman told the law clerk that he would obtain the documents either from his firm's storage facility in New York, or from his attorneys, and that if submitting those materials by the deadline set by the Court proved problematic, he would file a motion for an enlargement of time. Had he done so, he could have avoided sanctions.

Nothing filed in the Response belies the Court's initial finding that Yagman's response to the March 19 Minute Order was not filed in good faith and is not well grounded in fact or warranted by existing law. The Court finds that Yagman willfully disobeyed this Court's Order and that he failed to satisfy his Rule 11 obligations.

(c) *Yagman's failure to notify the Court of his prior motion under 28 U.S.C. § 455 to recuse Judge Real.*

■ Yagman was ordered to show cause why he should not be sanctioned for not notifying this Court pursuant to Local Rule 7.13 that a motion to recuse Judge Real under 28 U.S.C. § 455 had already been brought and adjudicated by another judge of this District.[6] Yagman purports to justify not informing this Court of his motion before Judge Davies by the following:

> "Yagman did not have the earlier motion in mind when he drew up the present motion. It did not occur to him to mention the earlier motion or to search his memory in making the present motion for recusal in a new and entirely unconnected action."

Yagman's contention that it did not occur to him "to search his memory" is belied by his statements in open court on March 7, 1991, about other matters he has had before Judge Real:

> "I got out of those cases. I gave them to other law firms because I knew, one, that Judge Real's bias against me was not—and this Circuit's basis for his being disqualified, and, second, knowing therefore that I couldn't get him disqualified in those cases based on the law [sic]."

Reporter's Notes of Hearing on March 7, 1991.

Finally, the factors cited for "Yagman's unawareness of the earlier motion for Judge Real's recusal" are equally unpersuasive. Yagman argues:

6. Local Rule 7.13 provides:

> If any motion, application or petition has been made to any judge of this Court and has been denied in whole or in part ... any subsequent motion for the same relief in whole or in part, whether upon the same or allegedly different state of facts, shall be presented to the same judge whenever possible. If presented to a different judge, it shall be the duty of the moving party to file and serve a declaration setting forth the material facts and circumstances as to each prior motion, including the date and judge involved in the prior motion, the ruling, decision, or order made, and the new or different facts or circumstances claimed to exist which did not then exist or were not shown upon such prior motion. Any failure to comply with the foregoing requirements shall be the basis for setting aside any order made on such subsequent motion, either sua sponte or on motion or application, and the offending party or attorney may be subject to sanctions provided by Local Rule 27.

(1) "Another attorney, Brian O'Neill, represented Yagman and signed the earlier recusal motion. Yagman did not sign the motion, although he was aware the motion was made and probably signed a declaration in support of the motion." *Response at 11.*

This is unpersuasive. The matter in which Yagman sought Judge Real's recusal was Yagman's readmission to the bar, following his six-month suspension by the California Supreme Court. Readmission to practice law is a matter of some importance to most attorneys. Based on Yagman's professed views of Judge Real, it is impossible to believe that he would not recall what must have been the troubling prospect of having Judge Real rule on his readmission. Yagman did, in fact, seek Judge Real's recusal, and the fact that Brian O'Neill signed the papers—with Yagman providing a sworn declaration—would hardly justify forgetting the existence of the earlier motion.

That Yagman claims he did not remember the earlier recusal motion, despite being asked about such motions, is particularly curious in light of the profile article included in his petition for writ of mandamus, in which Yagman told a reporter that although "he could not read printed matter until he was 12 ... he now has a photographic memory and is able to remember anything he reads." *Mandamus at 80.*

(2) Yagman also argues that he should not be sanctioned because Judge Real randomly reassigned his recusal motion rather than referring that matter to Judge Davies. It is not an excuse to Rule 7.13 that Yagman "treat[ed] the matter essentially as Judge Real did." *Response at 12.*

Local Rule 7 applies to litigants, not judges. There is no relevance to the fact that Judge Real randomly reassigned the underlying recusal motion. Even if there were, that fact would not excuse Yagman's failure to comply with the Local Rules.

IV. Conclusion

These sanctions are not related to the merits of Yagman's recusal motion. Rather, they arise solely from Yagman's failure to conduct himself and his motion practice in accord with the standards necessary for the proper, efficient functioning of our legal system. Yagman's unfettered disregard and defiance of the rules and authority of this Court cannot be countenanced.

The fact that Yagman's request for relief was not frivolous does not preclude the Court from sanctioning him for prosecuting the recusal motion in so abusive a manner. Such a rule would defeat one of the primary purposes of Rule 11, which is "to streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.,* — U.S. ——, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). This principle was recently emphasized by the Ninth Circuit in *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358 (9th Cir., 1991) (overruling Circuit precedent permitting imposition of Rule 11 sanctions only when the pleading as a whole was frivolous or filed for improper purpose).

Yagman's conduct is unbecoming a member of the bar of this Court. It disrupts the administration of justice and deprives other citizens of this Court's time and energy.

Therefore, the Court finds that Yagman's initial filing, his subsequent declaration, and his response to the Minute Order are each in violation of Rule 11. The Court further finds that Yagman willfully disobeyed this Court's Order. Finally, because such misconduct is not to be tolerated in the courts of the United States, Yagman is sanctioned under 18 U.S.C. § 401(3) and the Court's inherent power to protect the integrity of the judicial process.

The Court believes that suspension from the practice of law, or disbarment, may be warranted. *See, In re Snyder,* 472 U.S. 634, 643, 646 n. 7, 105 S.Ct. 2874, 2880, 2881 n. 7, 86 L.Ed.2d 504 (1985) ("Courts have long recognized an inherent authority to suspend or disbar lawyers"); *Peabody v. Maud Van Cortland Hill Schroll Trust,* 892 F.2d 772 (9th Cir.,1989), *cert. den.,* —

U.S. ——, 110 S.Ct. 3216, 110 L.Ed.2d 663 (1990) (Suspension from practice of law for not more than six months was reasonable sanction for attorney's frivolous filing of second removal petition, given finding of bad faith.); *In re Disciplinary Action Boucher, supra,* 837 F.2d 869 (9th Cir.,1988) (Material misrepresentations of record on appeal warrant suspension from practice before appellate court for a period of six months); *Standing Committee on Discipline of U.S. Dist. Court for Southern Dist. of California v. Ross,* 735 F.2d 1168 (9th Cir.,1984), *cert. den.,* 469 U.S. 1081, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984) (Violations of various disciplinary rules warrants suspension from practice in district court); *Matter of Tranakos,* 639 F.2d 492 (9th Cir.,1981) (Suspension from practice was appropriate until attorney can demonstrate to the court knowledgeability regarding the Federal Rules of Procedure and rules of court, and willingness to abide by orders of the court.); *In re Margolin,* 518 F.2d 551 (9th Cir.,1975) (Unduly delaying criminal appeal merits indefinite suspension from practice before Court of Appeals.); *In re Edmondson,* 518 F.2d 552 (9th Cir.,1975) (Failure to prosecute appeal with due diligence warrants six months' suspension.); *In re Chandler,* 450 F.2d 813 (9th Cir.1971) (Knowing attempt to deceive court as to client's finances to obtain relief from default warrants suspension.); *see also, In re Patterson,* 176 F.2d 966 (9th Cir.,1949) (Purpose of disbarment proceedings is to maintain integrity of the courts and the legal profession); *see also,* Rule 6–101(B)(2) of the Rules of Professional Conduct for the State Bar of California; Rule 8.4(d), American Bar Association, Model Rules of Professional Conduct (1983); Disciplinary Rule 1–102(a)(5), American Bar Association, Model Code of Professional Responsibility (1980).

Such a sanction is merited by Yagman's unprofessional and contemptuous conduct before this Court in this action. It is worthy of note, however, that Yagman's professional history suggests that neither monetary sanctions nor suspension appear to be effective in deterring Yagman's pestiferous conduct.

For example, in 1986 the Ninth Circuit admonished Yagman that "continued failure to abide by the rules of this court may result in formal disciplinary proceedings." *Hamblen v. County of Los Angeles, et al.,* 803 F.2d 462 (9th Cir.,1986). In that case, Yagman pursued an appeal with the same slipshod disregard of his professional responsibilities that characterized his lawyering before this Court.[7] Yagman was or-

---

**7.** The Circuit's exasperation with Yagman is evidenced by the following passage:

The manner in which this appeal was pursued by Hamblen's attorney, Stephen Yagman, raises additional concerns. Appellant presented us with an opening brief three and one-half pages in length. While brevity is a virtue, this effort fails to meet the requirements of a minimally acceptable appeal. At the risk of writing an opinion far longer than the brief itself, a description of some of its shortcomings may prove instructive to Yagman and others.

Federal Rule of Appellate Procedure 28 requires that appellant's brief contain a statement of the case, which "shall first indicate briefly the nature of the case, the course of proceedings, and its disposition in the court below." A "statement of facts relevant to the issues presented for review" must follow, with "appropriate references to the record." Yagman's brief fails in all these respects. His "statement of the case" barely hints at the nature of the case and its disposition in the court below. It contains not a single mention of the circumstances giving rise to Hamblen's claim. The statement does not even tell us who won or how. [Footnote omitted]. As noted above, his brief completely fails to apprise us as to the language of the instruction of which he complains. Moreover, the cover of appellant's brief does not comport with our standards. It fails to identify the nature of the proceeding or the court appealed from. Yagman's duplicating process left part of his brief barely legible. He even neglected to provide the requisite tan cover for his excerpts of record. All told, Yagman's pleadings are so riddled with deficiencies, they leave us entirely in the dark as to what his client's case is all about....

While failure to comply with a single technical requirement might not be cause for alarm, Yagman's wholesale disregard of the rules of appellate procedure—and those of common sense—makes it impossible for us or opposing counsel to deal with the merits of appellant's contentions.

Aside from its form, the substance of the brief is irresponsibly frivolous. 803 F.2d 462 (citations omitted).

dered to pay attorney's fees and double costs on the appeal. The Appellate Court stated further that it found the case "especially condemnable because it seems to be standard operating procedure for Mr. Yagman." *Id.*, n. 4, citing *Matter of Yagman,* 796 F.2d 1165, (9th Cir.,1986) and *Palmerin v. City of Riverside,* 794 F.2d 1409, 1414 (9th Cir.,1986) (appeal concerning admission of evidence could not be reviewed because Yagman failed to designate transcript containing evidence and objection).

In *Matter of Yagman*—the subject of much study by this Court—the Ninth Circuit reprimanded Yagman for "poor lawyering," noting that to the extent his client "lacked a 'day in court,' it was most likely due to an abandonment of that day by plaintiff's counsel." 796 F.2d at 1180, n. 18.[8]

In *Tomer v. Gates,* 811 F.2d 1240 (9th Cir.,1987), the Circuit condemned Yagman for conduct "unbecoming a member of the bar" and imposed monetary sanctions.

And in *Cabrales v. County of Los Angeles,* 875 F.2d 740 (9th Cir.,1989), the Circuit again reprimanded Yagman, this time for claiming $99,633.00 in fees for services rendered in connection with an appeal. The court found "the hourly rate claimed to be excessive and unreasonable.... [and] the hours claimed to be grossly excessive, unreasonable and poorly documented."

This pattern of conduct cannot be permitted to go unchecked.

Accordingly, this Court will furnish the California State Bar with a copy of this Order, and the previous orders issued in this matter, and a recommendation that Yagman be disciplined.

## V. ORDER

For the reasons set forth above:

IT IS HEREBY ORDERED that Stephen Yagman is sanctioned under Rule 11 of the Federal Rules of Civil Procedure, 18 U.S.C. § 401(3), and the inherent power of the Court.

A copy of this Order and the Order of March 27, 1991 shall be sent to the State Bar of California with a recommendation that Stephen Yagman be disciplined appropriately.

IT IS SO ORDERED.

## APPENDIX

### DECLARATION OF STEVEN J. ROTTMAN

I, STEVEN J. ROTTMAN, DECLARE AS FOLLOWS:

1. I am a law clerk to the Hon. William D. Keller, District Judge of the Central District of California. I am the law clerk responsible for the matters relating to, and arising from, the motion to recuse Chief Judge Real in the matter of *Stephen Yagman v. Republic Insurance,* CV 91–423–R (WDK). I know the following facts of my own personal knowledge, and, if called as a witness, I could and would testify competently thereto.

2. By Minute Order dated March 19, 1991, Judge Keller ordered Mr. Yagman to submit "a true copy of the complaint and all pleadings filed in *Manuel L. Real, etc. v. Stephen Yagman,* No. 87–250." Judge Keller asked me to telephone Mr. Yagman as a courtesy to notify him of the Order so that Mr. Yagman would have more time to comply. I placed a call to Mr. Yagman's office, and identified myself as Judge Keller's law clerk. I told the secretary that I was calling in reference to an Order to Show Cause just issued by the Court. Mr. Yagman's secretary refused to put me through to Mr. Yagman. Instead, she acted as an intermediary between us, relaying my messages to him and his responses to me. The conversation ended without my speaking to Mr. Yagman.

3. Approximately five minutes later, Mr. Yagman telephoned chambers. I spoke to Mr. Yagman and read the Minute Order to him. Mr. Yagman said, "There is no complaint and pleadings—just the petition for writ of certiorari and my brief in

---

**8.** For example, the court found Yagman did not present an opening statement, he admitted being unprepared, and he refused to answer direct questions from the court. 796 F.2d at 1180, n. 18.

opposition." He asked me if those were the documents sought by the Court, and I said "yes." Mr. Yagman then told me that those materials were in his firm's storage facility in New York, but that his lawyer in New York, Ramsey Clark, also had copies. Mr. Yagman expressed concern that he might not be able to submit the materials by the deadline set by the Court, and stated that he would file a motion for an enlargement of time if that turned out to be the case.

I declare under penalty of perjury that the foregoing is true and correct, and that I executed this Declaration on May 31, 1991 at Los Angeles, California.

> STEVEN J. ROTTMAN
> By: /s/ Steven J. Rottman
> Steven J. Rottman
> Law Clerk,
> The Hon. William D. Keller,
> District Judge of the Central
> District of California